## CENTRAL KENTUCKY NATURAL GAS CO. v. RAILROAD COMMISSION OF KENTUCKY ET AL.

No. 11. Argued November 7, 1933.—Decided December 4, 1933.

*Mr. Henry T. Duncan,* with whom *Messrs. Dyke L. Hazelrigg* and *Chester J. Gerkin* were on the brief, for appellant.

*Mr. Robert H. Winn,* with whom *Mr. Bailey P. Wootton,* Attorney General of Kentucky, and *Messrs. C. M. Harbison* and *S. H. Brown* were on the brief, for the Railroad Commission of Kentucky and the City of Lexington, appellees.

*Mr. Joseph A. Edge,* with whom *Messrs. Maurice H. Thatcher, John H. Connaughton,* and *Raymond M. Hudson* were on the brief, for Hignight et al., appellees.

Mr. Justice Stone delivered the opinion of the Court.

This is a suit in equity, brought by appellant, a Kentucky corporation, in the District Court for Eastern Kentucky, against the state Railroad Commission, certain state officers, and the City of Lexington, to set aside as confiscatory a rate prescribed by the Commission for the sale of natural gas distributed by appellant through its pipe lines to consumers in Lexington. The district court, of three judges, found the rate confiscatory, but refused to enjoin it because of the failure of the appellant to conform to a condition prescribed by the court as prerequisite to granting the injunction. 60 F. (2d) 137. From this decree the present appeal was taken under § 266 of the Judicial Code, 28 U.S.C.A., § 380.

In 1905 the appellant had secured a twenty-year franchise for the distribution of natural gas to consumers through its pipe lines in the City of Lexington. After the expiration of the franchise on September 5, 1925, and pursuant to ordinance of the City of Lexington of January 28, 1927, the appellant became the purchaser, at public sale, of a new franchise to distribute natural gas to consumers in Lexington, upon the terms and conditions of a written contract between appellant and the city, which

was incorporated in the ordinance and became effective on its acceptance by the city by ordinance of February 25, 1927.

The rate to be charged to consumers for gas was not fixed by the franchise contract. It stipulated that the gas supplied by appellant should be at just and reasonable rates, but it provided that, in the first instance, the rates should be designated by appellant in writing, by a rate schedule, filed with the mayor of the city and the Railroad Commission, and that if the city should consider the scheduled rates in excess of just and reasonable rates, it should, within a time specified, institute proceedings before the Railroad Commission to have a just and reasonable rate found and prescribed by it in accordance with the applicable statutes of the State. It was also agreed by the franchise contract that pending proceedings before the Commission and "subsequent proceedings in court," for the determination of a just and reasonable rate, the appellant should charge its patrons a temporary rate of 50¢ per thousand feet for gas consumed until such time as it should furnish certain increased pipe line service, required by the franchise, after which, and during the proceedings for fixing the rate, the temporary rate should be increased to 60¢ per thousand feet; that pending such proceedings 10¢ of the rate collected from customers, whether 50¢ or 60¢, should be impounded under the direction of the Commission and that at their conclusion "the Commission or the court" should distribute the impounded fund in accordance with the respective interests in it of appellant and its consumers.

Acting under the provisions of the franchise contract, appellant promulgated a schedule of rates on February 26, 1927, whereupon the city, on March 25, 1927, lodged a complaint with the Railroad Commission assailing the scheduled rates as excessive, and asked that it establish a just and reasonable rate. The Commission directed that 10¢ of the temporary rate collected by appellants

from consumers should be impounded with a custodian, appointed by the Commission, to receive and hold it pending final determination of the rate. In December, 1927, while the proceeding before the Commission was pending, the additional pipe line service required by the franchise was brought into operation and the prescribed temporary rate of 60¢ per thousand was established. Hearings were had and the proceedings continued before the Commission, which resulted in its order of October 9, 1929, assailed here, which fixed 45¢ per thousand as a just and reasonable rate and directed appropriate preliminary steps for the distribution of the impounded fund.

The bill in the present suit assails the 45¢ rate as confiscatory and hence an infringement of appellant's immunity under the Fourteenth Amendment, and contains allegations showing that appellant will be irreparably injured if the rate becomes effective. It prays that the respondents be restrained from carrying out the order of the Commission, and asks payment over to appellant of the impounded fund. The district court, by interlocutory injunction, enjoined any further proceedings under the order, and appointed as receiver the custodian of the fund impounded by direction of the Commission, to receive and hold, subject to the further order of the court, any fund required to be impounded by the franchise contract subsequent to the order of the Commission, and directed appellant, pending the final decree, to pay over to the receiver 10¢ of the 60¢ rate which it should collect from its patrons.

After a hearing and consideration of the evidence, the court found that the 45¢ rate was confiscatory, that a rate of 50¢ would be just and reasonable, and directed that a permanent injunction issue restraining the imposition of the 45¢ rate, but upon the condition that appellant file with the court its consent that the fund impounded from the rate collected in excess of 50¢ per thousand be distrib-

uted to such of its patrons as were entitled to share in it, and that it file with the Railroad Commission and with the Fayette Circuit Court of Kentucky its written consent that those tribunals make like orders of distribution of all funds in excess of the 50¢ rate which had been impounded and held by their orders. As appellant declined to consent to such distribution of the funds, final decree was entered denying the prayer for a permanent injunction, and directing that the fund impounded with the receiver be distributed among the consumers in proportion to their respective contributions to it.

From this decree appellant alone has appealed. While relying on the findings of the court below that the 45¢ rate is confiscatory, it challenges the finding that the 50¢ rate is just and reasonable, and upon that ground assails the provision of the decree directing distribution to the consumers of the impounded funds made up of collections in excess of the 50¢ rate. It also attacks the denial of a permanent injunction because of appellant's refusal to assent to the distribution of the impounded funds on the basis of that rate. Respondents, while resisting each of these contentions, seek also to sustain the decree denying the injunction on the ground that the 45¢ rate is not confiscatory. See *Langnes* v. *Green*, 282 U.S. 531; *United States* v. *American Railway Express Co.*, 265 U.S. 425.

1. There being no diversity of citizenship of the parties to the litigation, the jurisdiction of the district court to enjoin the 45¢ rate prescribed by the Commission is dependent wholly upon the allegations in the bill that the rate assailed was one prescribed by state authority and violates the Fourteenth Amendment because confiscatory. If the rate were fixed by agreement of the parties disclosed by the franchise contract exhibited in the bill, or if it were fixed by the Commission, acting as an arbitrator pursuant to agreement of the parties thus deriving its authority from the contract, it is plain that no federal question would

be presented. *Georgia Ry. & Power Co.* v. *Decatur*, 262 U.S. 432, 438; *Columbus Ry. & Power Co.* v. *Columbus*, 249 U.S. 399.

But the 45¢ rate was not one prescribed by the contract. By its terms the only effect of the contract upon rates, other than the temporary rates in force pending the proceedings before the Commission, was to allow the appellant to promulgate a schedule of rates which were to be effective unless, within a time specified, the city should proceed under the laws of the state to have a rate prescribed by public authority. By §§ 201e-2, 201e-5, 201e-11, 201e-14 of the Kentucky statutes the Railroad Commission is clothed with the authority of the state to fix rates for the distribution of natural gas by public service companies and is required, upon complaint, to fix just and reasonable rates. It derived its power to fix the rate in the present case, not from the agreement of the parties to this litigation, but from the state legislature. It was that power which the city called into action by its complaint to the Commission that the rates designated in appellant's rate schedule were excessive. The rate, being prescribed by state authority, was, if confiscatory, an infringement of constitutional limitations. The case made by the bill was, therefore, within the jurisdiction of the court below, and called for its determination of the constitutional issue presented.

2. While the jurisdiction of the court was invoked to enjoin the rate because confiscatory, it nevertheless denied any relief from the imposition of the 45¢ rate which it had found to be confiscatory, and directed the return to appellant's patrons of the fund impounded from the collections made in excess of the 50¢ rate. The basis of this action was the finding by the court that the 50¢ rate was just and reasonable, from which it concluded that the appellant was not entitled to retain any amounts collected from its consumers in excess of that rate, and that the

court might, in its discretion, deny any equitable relief since the appellant itself had refused to do equity by consenting to the rate which the court deemed just and reasonable.

The power of a court of equity, in the exercise of a sound discretion, to grant, upon equitable conditions, the extraordinary relief to which a plaintiff would otherwise be entitled, without condition, is undoubted. It may refuse its aid to him who seeks relief from an illegal tax or assessment unless he will do equity by paying that which is conceded to be due. *State Railroad Tax Cases,* 92 U.S. 575; *Cummings* v. *National Bank,* 101 U.S. 153; *Peoples National Bank* v. *Marye,* 191 U.S. 272, 287; see *Norwood* v. *Baker,* 172 U.S. 269, 294. It may withhold from a plaintiff the complete relief to which he would otherwise be entitled if the defendant is willing to give in its stead such substituted relief as, under the special circumstances of the case, satisfies the requirements of equity and good conscience. *Harrisonville* v. *Dickey Clay Co.,* 289 U.S. 334, 338. It may prescribe the performance of conditions designed to protect the rights of the parties pending appeal, *Hovey* v. *McDonald,* 109 U.S. 150, 157, or to protect temporarily the public interest while its decree is being carried into effect. See *Consolidated Gas Co.* v. *Newton,* 267 Fed. 231, 273; *Newton* v. *Consolidated Gas Co.,* 258 U.S. 165.

There are nevertheless some limitations upon the extent to which a federal court of equity may properly go in prescribing such conditional relief, which are inherent in the nature of the jurisdiction which it exercises. District courts may set aside a confiscatory rate prescribed by state authority because forbidden by the Fourteenth Amendment, but they are without authority to prescribe rates, both because that is a function reserved to the state, and because it is not one within the judicial power conferred upon them by the Constitution. See *Newton*

v. *Consolidated Gas Co., supra; Reagan* v. *Farmers Loan & Trust Co.,* 154 U.S. 362, 397; *Honolulu Rapid Transit & Land Co.* v. *Hawaii,* 211 U.S. 282; cf. *Keller* v. *Potomac Electric Power Co.,* 261 U.S. 428; *O'Donoghue* v. *United States,* 289 U.S. 516.

This Court has warned that the power to attach conditions to decrees enjoining state rates should be cautiously exercised. *Newton* v. *Consolidated Gas Co., supra,* 175. The practical effect of a denial of relief unless the plaintiff will submit to a rate, the reasonableness of which he challenges, is to make the surrender of the right to invoke a distinctively state legislative function the price of justice in the federal courts. The practice would tend to curtail the exercise of that function by action of a court which is itself without authority either to exercise it or to prevent the state from doing so. Such interference with the legislative function is not a proper exercise of the discretionary powers of a federal court of equity. See *Honolulu Rapid Transit & Land Co.* v. *Hawaii, supra.*

Such a condition, too, is different from the requirement that a plaintiff shall pay a tax, the amount of which is known and conceded to be due, as a condition of enjoining an excessive tax. In *Norwood* v. *Baker, supra,* 291, 294, this Court pointed out that it would be improper, as a condition of enjoining an unconstitutional special assessment levied by a state authority, to require the plaintiff to tender the amount of such assessment as the court should consider might lawfully be made by state action not yet taken. In *Newton* v. *Consolidated Gas Co., supra,* where the legislature was not in session and had not delegated its power to fix rates, the court sustained a decree enjoining a rate as confiscatory on condition that the plaintiff should impound the rate collected in excess of the confiscatory rate until a specified date, after the assembly of the legislature, or until a new rate should be fixed by state authority. But the condition was approved

on the ground that its practical effect was to preserve the rights of the parties pending the appeal.

Here the rate-making body, the Railroad Commission, is free to perform its function of fixing a just and reasonable rate as soon as the confiscatory rate is enjoined. The rights of the parties are fully protected both by the provision of the franchise contract and the order of the Commission in the proceedings brought to fix the rate, not yet terminated, requiring collections by appellant in excess of the 50¢ rate to be impounded with the custodian. The condition imposed here was not calculated to protect the rights of the parties pending an appeal or further action by the rate-making body. Compliance with it would have involved the surrender of rights asserted by appellant to the funds impounded during a period of more than five years. It would have made impossible any court review of the condition, by appeal or otherwise.

In the circumstances, there was no occasion for the court to draw upon its extraordinary equity powers to attach any condition to its decree, and the condition which it did attach was an unwarranted intrusion on the powers of the Commission. On the basis of its conclusion that the 45¢ rate was confiscatory, it should have granted appropriate relief, without condition, leaving the Commission free to exercise its authority to fix a reasonable rate, and it should have relinquished its control over the impounded fund by directing the receiver to retain it, not as receiver, but in his capacity as custodian appointed by the Commission, to await its action in fixing a lawful rate.

3. The court below based its conclusion that the 45¢ rate was confiscatory and that the 50¢ rate would be just and reasonable upon a valuation of the property included in the rate base as of December 31, 1926, a date shortly preceding the effective date of the franchise, which was February 25, 1927. In choosing this date for establishing

the rate base the court acted upon consent of the parties, which it interpreted as requiring it to make as of that date all findings and determinations having a bearing upon the effect of the 45¢ rate and the reasonableness of the 50¢ rate. Although the case was not ready for final decree until September, 1932, and the decree, like the Commission's order, spoke for the future as well as for the past, the findings upon which it rested were thus restricted to the date which, for all practical purposes, may be treated as the effective date of the franchise.

In making the findings as of December 31, 1926, the court considered evidence, tending to support them, of earnings and other relevant data during a number of years preceding that date and the year following. In that year the temporary 50¢ rate was in force until December, and until that time no substantial change was shown in the conditions affecting the propriety of the rate fixed by the Commission from those prevailing on December 31, 1926. But by December, 1927, the additional pipe line service which, by the franchise, appellant was required to furnish, had been brought into operation and the agreed temporary rate of 60¢ was established. Before that date the rates paid by appellant for gas purchased for its service from producers had ranged from 10¢ to 20¢ per thousand feet. But the additional pipe line service was procured by contract with another company by which appellant agreed to purchase annually 750 million feet of gas at 40¢ per thousand. As the court considered itself restricted to findings as of December, 1926, it declined to take into account the effect of the increased cost of gas under this contract in making findings as to the propriety of the Commission's rate. That restriction also necessarily excluded from consideration the profound changes in values, costs of service, consumption of commodities and reasonable return on invested capital which we judicially know took place during the period of more than five years while the case was pending before the

Commission and the court. See *Atchison, T. & S. F. Ry. Co.* v. *United States,* 284 U.S. 248.

It is apparent that any decree to be entered here, based on findings so restricted, must be similarly restricted in its operation, and should speak of the validity of the Commission's rate only as of a time approximating the date when the franchise became effective. Respondents assail the court's findings that the 45¢ rate was confiscatory and that the 50¢ rate was reasonable, and its findings of value and of the amount to be allowed as a deduction from gross revenue for amortization of the appellant's plants. So far as these objections and others are addressed to the weight of the evidence, we are satisfied that the evidence supports the findings as restricted in the manner already indicated. In view of the limited effect which must be given to any decree to be entered, we have no occasion to consider these objections in any other aspect.

The decree will be reversed and the cause remanded, with instructions to enter a decree enjoining so much of the Commission's order as fixes the rate to be charged for gas distributed by appellant to consumers, and relinquishing any further control by the court or its receiver over the impounded fund in his hands, by directing that he shall continue to hold such fund, not as receiver, but in his capacity as custodian for the Railroad Commission. The decree will state that it is without prejudice to the right and power of the Commission to fix a just and reasonable rate, and that it makes no adjudication of the validity of the 45¢ rate fixed by the Commission, so far as it may be affected by changed conditions after February 25, 1927, the effective date of appellant's franchise. Costs, other than in this Court, will be awarded in the discretion of the court below.

*Reversed.*

Mr. Justice Sutherland took no part in the consideration or decision of this case.