## COLUMBUS GAS & FUEL CO. v. CITY OF COLUMBUS et al.

### No. 362.

District Court, S. D. Ohio, E. D.

Dec. 16, 1941.

Freeman T. Eagleson and Clarence D. Laylin (of Eagleson & Laylin), both of Columbus, Ohio, for Columbus Gas & Fuel Co.

John L. Davies, City Atty., and James W. Huffman, both of Columbus, Ohio, for City of Columbus.

UNDERWOOD, District Judge.

This case had its inception in a bill of complaint filed in this Court by the Columbus Gas and Fuel Company against the City of Columbus, Ohio, April 29, 1925. The Gas Company sought to restrain the operation of a certain gas rate ordinance upon the ground that the rate provided therein amounted to an unlawful taking within the meaning of the Fourteenth Amendment of the Federal Constitution and that it deprived the complainant of its right to acquire, possess and protect property under Section 1, of Article 1, of the Constitution of the State of Ohio. Since that date, the case has been pending in the various Federal Courts.

The questions now before this Court for consideration grow out of what amounts to a purported settlement and compromise between the City and the Gas Company, by means of which it is proposed to dispose of the case by agreement and without further litigation. These questions are relatively limited in scope and the issues immediately involved are definitely restricted in their nature as compared with the broad general issues made by the previous pleadings. The present issues, however, are of the utmost importance, for if they should be decided in accord with the theory of settlement as advanced by the complainant company, then effect will have been given to the purported compromise and the entire case disposed of by the decision. In that event, the impounded fund amounting to nearly $2,000,000, and which is drawing no interest, will be released while some of those contributing to it are still alive to enjoy their part of it. On the other hand, if this purported settlement between the City and the company cannot be, and is not sustained by the Court, then regardless of what the final decision of this Court may be upon the full merits of the case,

judging from the history of the litigation in the past, it may be safely predicted that it will be left to wend its weary way among the intricacies of technical jurisprudence for many more years to come. No one could predict when the final determination could be reached nor how many appeals would be involved therein. These matters are not, of course, determinative of the issues herein considered, but they, in themselves, do indicate that determination of the present issues should be made by the Court only after full deliberation and with the utmost care and attention to the law and the facts.

In order to deal properly with the present questions, it is essential that there be some statement and understanding of the past history of the case. The Court will therefore briefly review the course of these proceedings leading up to the present purported settlement.

On November 4, 1924, the City of Columbus adopted and passed a certain ordinance, fixing for a period of five years, beginning September 12, 1924, the price to be charged for natural gas furnished to citizens of Columbus, at forty cents net per thousand cubic feet. At that time, natural gas was being delivered to the consumers of Columbus by the Columbus Gas and Fuel Company and the Federal Gas and Fuel Company. The Gas Companies objected to the ordinance and refused to accept its terms.

Then on April 29, 1925, the Columbus Gas and Fuel Company filed its bill of complaint herein, its basic contention being that the rate provided by the ordinance was confiscatory within the meaning of the Fourteenth Amendment of the Federal Constitution and that it deprived the complainant of its right to acquire, possess and protect property under Section 1, Article 1, of the Constitution of the State of Ohio. The Complainant prayed for an injunction against the enforcement of the ordinance and the application of the ordinance rate. It likewise prayed that the said injunction prevent interference with the complainant's collecting a rate greater than the ordinance rate but not more than 74¢ per thousand cubic feet.

Acting upon the prayer of this complaint, Judge Hough who then occupied the Bench of this Court, did, on May 16, 1925, grant a preliminary injunction prohibiting enforcement of the ordinance rate and prohibiting any interference with the complainant's collection of a minimum charge

of 75¢ per month and its collection of payment for its gas as follows: 55¢ per 1,000 for the first 10,000 cubic feet per month; 65¢ per 1,000 for the next 10,000 cubic feet; and 75¢ per 1,000 for all over 20,000 cubic feet used in any month. Among other provisions of the injunction was the following:

"This injunction is conditioned that the plaintiff issue to each consumer so paying the rates herein provided, a receipt reciting the fact that said person so paying such rate is entitled to receive from the plaintiff the difference between the rate paid and the rate finally fixed by the appropriate and proper rate fixing authority, and within a period of thirty (30) days after its order may become final; and the plaintiff is further required, as a condition of this injunction, to keep in a separate deposit in a national bank in the City of Columbus, Ohio, designated by this court as a depository for United States funds, such deposit open at all times to the inspection of the Clerk of this Court, all moneys received by plaintiff for gas consumed under the rates herein specified, over and above the flat rate provided for in said ordinance No. 35,533, to-wit: forty (40) cents net per 1,000 cubic feet."

Thereafter, on May 21, 1925, the City of Columbus filed its answer and cross bill praying for certain injunctive relief and asking also that the Federal Gas and Fuel Company, the Ohio Fuel Gas Company, and the Ohio Fuel Supply Company be made parties to the suit. Needless to say, the City expressly denied that the rate provided by the ordinance was confiscatory or unconstitutional. The City further took the position that since both the Columbus Gas and Fuel Company (complainant), and the Federal Gas and Fuel Company, were distributing gas at retail to the consumers; that since such gas was purchased solely from the Ohio Fuel Gas Company under a gate rate contract whereby the cost was based upon the selling price to the consumer, and since the stock of all three companies, with the exception of certain qualifying shares was owned by the Ohio Fuel Supply Company, the price fixed by the gate rate contract was no longer controlling and that the Ohio Fuel Supply Company was the real party in interest. It may be remarked at this point that although the question as to whether or not the gate rate contract did govern the cost of gas to the complainant was one of the most important

factors in the original case, it has long since been removed from the consideration of this Court by stipulation between the City and the Gas Company.

This answer and cross bill brought the Federal Gas and Fuel Company into the case and that company filed its own separate answer to the cross bill of the City, June 8, 1925, admitting the facts alleged by the City with regard to the common ownership of stock and stating its own claim for injunctive relief, in substantially the same terms as those set forth by the Columbus Gas and Fuel Company in its original complaint. Thereupon, the late Judge Benson W. Hough, issued an interlocutory injunction in practically the same terms as that issued in behalf of the Columbus Gas and Fuel Company in so far as rates to be collected and amounts impounded were concerned.

Other pleadings were filed and among them were the answers filed by the Ohio Fuel Supply Company and the Ohio Fuel Gas Company wherein the common ownership of stock was admitted but its materiality denied and both denied that they were proper parties to the suit.

Throughout the pleading charges and counter charges were hurled and denials and allegations made, pages of them, but the principal issue remained, "Was the ordinance constitutional, or was it confiscatory and therefore unconstitutional?" This of course involved the determination of the value of the property of the companies, the amount of income and the amount of expense incurred, and entering into the item of expense was the cost of gas, involving (at that time and before the stipulation hereinbefore mentioned) the validity of the gate rate contracts. In all of these issues the litigants were in sharp disagreement. Subsequent pleadings did not substantially change either the issues or the positions of the parties.

At this stage of the proceeding, the matter was referred to Oscar W. Newman as Special Master. He was instructed to determine first whether or not the ordinance was confiscatory if the gate rate contracts be regarded as controlling, and if not, to so report. But if the Master should find that there was confiscation upon that basis, he should then determine if such contracts were conclusive as to cost. Other instructions were given, but these were the provisions having application to the present questions. The Master thereafter filed his re-

port in which he found that the ordinance was not confiscatory as to either the Columbus Gas and Fuel Company or the Federal Gas and Fuel Company, although it be considered that the gate rate contracts were binding. Both sides objected to the report of the Master from many angles.

When the matter came on for hearing before Judge Hough, he sustained the Master in most respects and specifically as to the validity of the ordinance, the Court holding: "Under the facts of the case and the circumstances and situations which surround the parties to this suit, with a rate of return, as above mentioned, to the two ultilities distributing natural gas in the City of Columbus, Ohio, it cannot be said that the guarantees afforded by the United States Constitution have been infringed and this rate of return is found to be nonconfiscatory." Columbus Gas and Fuel Co. v. City of Columbus, D.C., 17 F.2d 630, 641.

And again at page 641, of 17 F.2d:

"This opinion sustains the conclusion of the master upon the paramount issue, to wit: The constitutionality of the ordinance of the City of Columbus.

"There is a well-marked distinction between a return nonconfiscatory in character, and one which is fair in a commercial and economical sense. A rate of return may be all sufficient in fulfilling the demands of the Fourteenth Amendment to the Constitution of the United States, and at the same time fail in amount to encourage and justify the operation of a utility business under that degree of maximum efficient service to which the public is entitled. The former is a purely judicial question, while the latter is essentially legislative."

Based upon this opinion, a journal entry was made by Judge Hough on February 18, 1927, and with regard to the question of rates, it was provided:

"It is further ordered that the former orders of this court fixing temporary rates are hereby modified as follows: effective as to all meter readings after February 25th, 1927, and until further order of this court, or the order of an appellate court to which this case may be taken, the said defendant, the City of Columbus, is hereby restrained and enjoined from preventing the plaintiff, the Columbus Gas and Fuel Company, and the defendant, The Federal Gas and Fuel Company, from fixing and charging for natural gas furnished to their consumers in the City of Columbus, the following rate, to-wit:

"A minimum charge of seventy-five cents (75¢) net per month to each consumer; forty eight cents (48¢) net per M. cubic feet of natural gas used by each consumer in any one month subject to the addition of 5¢ per each M. cubic feet in case of non-payment of bill therefor within 10 days after receipt of such bill; and said companies shall not be required to impound or refund any part of the monies received under said rate.

"and the plaintiff, The Columbus Gas and Fuel Company, and the defendant, The Federal Gas and Fuel Company, are hereby restrained from fixing and charging for natural gas furnished to their consumers in the City of Columbus, rates in excess thereof."

\* \* \* \* \* \*

"It is further ordered, and The Columbus Gas and Fuel Company and The Federal Gas and Fuel Company are hereby required, within a period of 90 days from and after the entry of this decree, to return in cash, out of monies heretofore impounded under said interlocutory injunctions, to their respective consumers the difference between the rate herein fixed and the rates heretofore fixed by said interlocutory orders effective May 1, 1925, as applied to all gas sold to consumers within the corporate limits of the City of Columbus by said respective companies from and after May 1, 1925, until the date when the rates fixed by this order take effect, and the remainder of the monies so impounded is hereby released to said companies respectively."

The companies were dissatisfied with the decision of the Court and carried the matter to the Circuit Court of Appeals. By an order filed May 13, 1927, in cases Nos. 4925; 4926; and 4927 it was held that the order of the District Court was separable and that the appeal should operate as a supersedeas as to that part of the order requiring the companies to refund all money above the 48¢; but since that part of the order which permitted the withdrawal of all money up to 48¢ had not been appealed from, the companies had the right to make such withdrawals. Upon this holding, the continuance of the injunction was denied.

When the matter came on before the Circuit Court of Appeals for final consideration, the Court found that: "\* \* \* the five-year period of the ordinance had expired, and the controversy had become moot, except as to the disposition of the impounded fund. This question is one of final

character; all matters of temporary or interlocutory character have disappeared, and we must make a final decree, if any." Columbus Gas & Fuel Co. et al. v. City of Columbus, 6 Cir., 55 F.2d 56, 57.

The appellate court, determined that the record was not sufficient and remanded the case with instructions to vacate the decrees appealed from and to complete the record.

After its remand to this Court, the case remained in a more or less dormant state for several years, during which the illness and death of Judge Hough occurred and the present Judge was appointed. Thereafter, the parties again began to press the matter, and a Special Master was appointed by the present Judge to complete the record. Hearings covering many months were held before the Master. After the record had been completed and before the Master had filed his report with the Court, the Council of the City of Columbus did, on August 5, 1940, duly pass a certain Ordinance No. 337-40, entitled:

"To regulate the price that may be charged for natural gas in the City of Columbus, Ohio, by The Ohio Fuel Gas Company, its successors and assigns, during the period commencing on the 12th day of November, 1940, and ending on the 11th day of November, 1944; to provide for the settlement of pending litigation and proceedings in which The Ohio Fuel Gas Company or its predecessors and the City of Columbus are parties; to repeal ordinance No. 302-39 of the City of Columbus, Ohio, entitled: 'An ordinance No. 302-39—to regulate the price that may be charged for natural gas in the City of Columbus during the period of two years from the 12th day of November, 1939, and providing for the submission of this ordinance to a referendum vote at the election to be held November 7, 1939'; and to provide for the submission of said provisions of this ordinance to the vote of the electors of the City of Columbus, Ohio, at the general election to be held on the 5th day of November, 1940."

This ordinance is not directly connected with the questions now before this Court, except for the fact that in the instant case, it has been raised as defensive matter by the City of Columbus. It is therefore mentioned in the proper chronological order of occurrence. It may be added that Ordinance No. 337-40 was duly submitted to the electors of the City in the general election of November 5, 1940 and was rejected.

On March 17, 1941, Council of the City of Columbus passed another ordinance, No. 140-41, entitled: "To provide for the settlement and final disposition of Cause No. 362, in equity, pending in the District Court of the United States, for the Southern District of Ohio, Eastern Division, and of the appeal in Cause No. 1350, pending in the court of appeals of Franklin County, Ohio, in which the Ohio Fuel Gas Company, or its predecessors, and the City of Columbus are parties."

This ordinance was duly approved by the Mayor and was published as required by the Charter. No referendum petition was filed within the thirty days after final passage as provided by law, and apparently the ordinance became effective on or about April 17, 1941. Within ten days thereafter, the Ohio Fuel Gas Company, stipulated successor in this litigation to the Columbus Gas and Fuel Company and the Federal Gas and Fuel Company, filed its written acceptance of the ordinance as required, and now contends that a settlement has been consummated between the City and the Gas Company by reason thereof.

It is this ordinance of March 17, 1941, which is the foundation and basis of the questions now before this Court. All that has gone before the ordinance is immaterial at this time, except in that such events may have some bearing upon the questions now presented by the ordinance and the pleadings with reference thereto.

The present aspect of the case comes before the Court upon a supplemental complaint filed by the Gas Company May 6, 1941, in which the facts relating to the passage of Ordinance No. 140-41 are related and the allegation is made that the ordinance and its acceptance by the Company, constitute a final settlement of the litigation here pending. It is further alleged that a form of consent decree to effectuate the settlement was prepared by the Company and presented to the City Attorney, who refused either to approve or to sign the decree. A copy of the ordinance and the proposed consent decree are attached to the pleading as exhibits. The complainant prays that the City of Columbus be required to appear and show cause why a consent decree in such form as may be required to effectuate the settlement should not be entered, and that upon final hearing, this Court may enter such a decree.

The City filed its answer to the supplemental complaint May 15, 1941, admitting

substantially all of the facts alleged by the Company, but denying the contention and theory of the Company that such facts constituted a settlement. The defense of the City is made upon the following grounds: (Summarized by the Court)

1. That the Ordinance of 1924 established a 40¢ rate; that the Ordinance No. 140-41 here in question, is a rate ordinance making a change in that rate, which cannot become effective until submitted to, and accepted by, the electors of the City in accordance with the terms of Sec. 192 of the City Charter;

2. That unless Ordinance No. 140-41 constitutes and effects a change in rates, Council is without power or authority to make a compromise settlement; and

3. That the Charter provides in Sec. 45 that ordinances rejected or repealed by referendum shall not be re-enacted in whole or in part, except by electoral vote; that Ordinance No. 140-41 now in question, was in fact included in Ordinance No. 337-40 passed by Council but rejected by the people in a general election held November 5, 1940, and that therefore, Ordinance No. 140-41 cannot become effective without submission to the electors at a general election.

The complainant responded to this pleading by filing a motion for judgment on the pleadings. Numerous briefs were filed by both parties and on June 10, 1941, the matter came on to be heard by the Court upon the supplemental complaint, the answer, and the motion of complainant for judgment.

The evidence now before the Court in support of the issues now being considered, is limited to the exhibits attached to the pleadings and a stipulation entered into by the parties on June 10, 1941, which reads as follows:

"It is stipulated and agreed by and between the Counsel for the respective parties that the only question before the Court under the supplemental Pleadings and the Motion for Judgment is as to whether or not Ordinance No. 140-41, passed by the Council of said City and approved by the Mayor thereof and accepted by the Gas Company, and on which no Referendum Petitions have been filed pursuant to Charter or general law, must by the Charter of the City of Columbus be submitted to and approved by the electors of the City before this Court may enter a consent decree predicated thereon, distributing the moneys remaining impounded by and subject to the orders of this Court (being collections between 1925 and 1927 in excess of 48¢) and thus disposing of the entire litigation, as other questions have become moot."

Hence the basic question now before this Court is whether or not the Ordinance No. 140-41 and its acceptance by the Gas Company constitute a valid settlement of this litigation. Or, in shorter terms, "Is Ordinance No. 140-41 now valid and in effect?"

It is this question that the Court now proposes to consider in view of the objections and defenses of the City. The Court has been unable to find specific authority bearing directly upon the points here in issue, and the briefs of counsel would indicate that they too have searched without any marked success. It is apparent therefore, that the solution of the present problems is not to be found, directly put, in any statute or case; rather, it would seem that the major part of the solution is to be found in general principles of law and equity and in the early historic factors of the case itself.

The City most strenuously contends that the ordinance of 1924, established a 40¢ rate and that any ordinance for the settlement of this litigation is therefore a rate ordinance, making a change in that rate, which under the provisions of Sec. 192 of the City Charter, must be approved by the electorate before it can become effective. This section reads as follows:

"Sec. 192. Grant. The council may by ordinance grant permission to any individual, company or corporation to construct and operate a public utility in the streets and public grounds of the city; subject, however, to the provisions of the general law requiring consents of abutting owners. It shall prescribe in the ordinance the kind and quality of service or product to be furnished, and shall provide for fixing the rate or rates to be charged therefor, and prescribe the manner in which the streets and public grounds shall be used and occupied, and any other terms and conditions conducive to the public interest; except and provided, however, that no original grant of any public utility franchise, or renewal thereof, or extension of the time of such original grant, or change in rates, shall become operative until it shall have been submitted to the vote of the electors of the city and approved by a majority of those voting thereon."

There is no doubt whatever but that the Ordinance of 1924 was meant to be, and was in compliance with that section of the

City Charter. It is likewise indisputable that this ordinance provided a 40¢ rate for gas sold in the City of Columbus. Hence there was, to that point, a rate established by the proper and authorized rate making authority of the City; but that rate never became effective; a 40¢ rate was never collected under it during any part of its life. It may be added, that Council of the City of Columbus never fixed, sanctioned, or authorized any rate that was collected during that period. So, that at the beginning of this litigation, the City was seeking to compel the Gas Company, by virtue of the ordinance, to sell gas to its consumers at 40¢ and the Company was resisting upon the ground that sales at the price so fixed would amount to confiscation. Under the circumstances, it hardly follows that an ordinance enacted for the purpose of settling the pending litigation must be considered, ipso facto, a rate changing ordinance, simply because the 40¢ ordinance was enacted by council.

In considering the present issues, the nature of the original action must constantly be kept in mind. This is a suit in equity brought to prevent confiscation under the provisions of the Fourteenth Amendment; it was not filed by the Gas Company for the purpose of having this Court fix a gas rate. This is shown by the bill of complaint wherein it is alleged that the operation of the 40¢ ordinance would amount to an unconstitutional confiscation of the complainant's property. It is shown by the fact that this Court assumed jurisdiction of the case in the beginning, for the ground of jurisdiction was the constitutional question. It is shown by the prayer of the complaint, wherein the complainant asked that enforcement of the ordinance be restrained and that the City be restrained from interfering with collection of an amount for gas substantially in excess of the amount provided by the ordinance. Above all, however, under the decisions of the Supreme Court of the United States, utility rates within States are not questions for the Federal Courts. The Supreme Court has repeatedly held that Federal Courts are without power to fix such rates and that they are not rate-making bodies, because such power has never been granted to the Federal Government by the States but has been reserved to the States, and because no attempt was made in the Constitution to confer such power upon Federal Courts; hence it may be said that the power to fix such rates has never been surren-

dered by the States nor claimed by the Federal Government. Central Kentucky Natural Gas Co. v. Railroad Commission of Kentucky et al., 290 U.S. 264, 54 S.Ct. 154, 78 L.Ed. 307; Los Angeles Gas & Electric Corp. v. Railroad Commission of California et al., 289 U.S. 287, 53 S.Ct. 637, 77 L. Ed. 1180; Pacific Gas & Electric Company v. City and County of San Francisco, 265 U.S. 403, 44 S.Ct. 537, 68 L.Ed. 1075; Newton, Attorney General of State of New York, et al. v. Consolidated Gas Company of New York, 258 U.S. 165, 42 S.Ct. 264, 66 L.Ed. 538. These cases are likewise authority for the statement of principle that Federal Courts are concerned only with the constitutional question and if the rate in question is high enough to escape the legal definition of confiscation, the Court is not concerned, be the rate ever so niggardly; nor is the Court concerned where rates are too generously high. The only question in such cases with which the Federal Courts can concern themselves, is the bare question of confiscation; all else beside that single issue is a question for the states and their proper legislative and regulatory bodies.

It may therefore be stated categorically that when the argument between the City of Columbus and the Gas Company came into this Court, what had been a rate case, became a suit in equity to prevent confiscation under the Fourteenth Amendment. Although, in testing the constitutionality of rates, the Federal Courts may follow a process which is often akin and sometimes identical with that used by the regulatory bodies, that does not alter the fact that the regulatory body in the one case is "fixing the rate", and the Federal Courts in the other case are "testing the rate." It follows from what has been said that there was never a "rate-fixing" case in this Court or in this proceeding.

It has been stipulated that the remaining issues of the original action have now been further restricted and the only question pending therefrom is the question of the disposition of the impounded fund. This fund arose from collections made under the 55¢-65¢-75¢ provisions of the preliminary injunction issued by this Court, May 16, 1925. All collections above the 40¢ rate prescribed by the ordinance were impounded. Later, the Gas Company was permitted to take down the funds collected up to 48¢ and by the same order, dated February 18, 1927, the Company was permitted to continue to collect 48¢; for al-

though Judge Hough, then sitting, had found the 40¢ ordinance nonconfiscatory, pending, and in preparation for an appeal, the Company was granted an injunction against interference with its collecting the 48¢ pending further order. The impounded fund, therefore, is the collections made in excess of the 48¢ rate, which were made under the terms of an order of this Court, and impounded under the same authority.

The Supreme Court has held that when the operation of a rate has been suspended by injunction, the further requirement that the Company may make an increased charge, which shall be impounded, is a limitation in favor of the consumers; that is, the power of the company to charge, when the restriction of the ordinance is removed, is limited by the injunction. It does not follow that in disposing of such a fund, the Court must undertake to "fix a rate" for the interval, or that a rate must of necessity be fixed to dispose of the fund or the litigation in a Federal Court. In Newton v. Consolidated Gas Co., 258 U.S. 165, 178, 42 S.Ct. 264, 267, 66 L.Ed. 538, the Court held:

"All impounded funds should be promptly released to the Gas Company subject only to deductions for such costs as are clearly assessable to the prevailing party. * * *

"It seems proper to add that we do not intend by anything said herein to intimate what would have been a reasonable rate for the sale of gas under the circumstances disclosed. The 80-cent rate was confiscatory; the $1.20 maximum imposed by the court during a specified period as a condition to the injunction was a limitation in favor of the consumers."

Neither the proper rate nor the constitutionality of the 40¢ ordinance has been conclusively found by any decision now existing, and it may well be argued upon the authority of the Newton case, that should the 40¢ ordinance be found confiscatory, then the entire fund should go to the Gas Company. But it is apparent also from this case that neither the Court nor the parties must "fix a rate," in order to dispose of the fund so accumulated; the concept stated by the Supreme Court simply does not lend itself to such interpretation.

■ The original suit filed herein sought injunctive relief against the enforcement of what was claimed to be an unconstitutional ordinance. The fund ac-cumulated was accumulated as a limitation in favor of the consumers after the ordinance had been suspended by the same injunction. Now the parties, the Gas Company on the one hand, and the City of Columbus, on the other, seek to compromise their differences and to agree directly between themselves as to the disposition of the fund and the termination of the action. There is nothing in the nature of this case nor in the general principles of law which would render an ordinance for that purpose, such as 140-41, a rate-fixing, or a rate-changing ordinance, within the meaning of Section 192 of the City Charter. On the contrary, however, the general tenor of the decisions of the Supreme Court indicates that such a theory is untenable. The matter involved is the settlement of a suit in equity and the disposition of a fund created by the Court, and these questions although arising out of a rate controversy do not constitute a rate case. It is true that the parties might, if they chose, decide upon a division of the fund upon a "rate fixing basis," but on the other hand they are not required to do so, and they may by agreement simply decide upon the proportions to go to each, as they have done in this case.

The Court may add that it does not consider the Kentucky cases cited by the City as controlling in the present case, for there was in that case a requirement that settlement be made upon a rate fixing basis and the only serious question was whether or not the informal procedure followed could suffice to meet that specific requirement.

■ Thus having disposed of the first contention of the City, we shall consider the second, namely, if the ordinance designated 140-41 is not a rate ordinance, the Council is without power to make a compromise settlement. First, it may be considered that the present action was brought by the Gas Company against the City of Columbus and in so far as the City of Columbus is concerned, there has been no change in its capacity. Therefore, if there is to be a settlement of the litigation, it must be settled by the Gas Company and the City of Columbus. It is elementary that the mere fact that a municipal corporation may sue and be sued confers upon it also the power to compromise and settle both threatened and pending suits. O'Connell v. Pacific Gas & Electric Co. et al., 9 Cir., 19 F.2d 460; City of Port Townsend, Wash., v. First Nat. Bank of Central City,

Colo., 9 Cir., 241 F. 32; Agnew et al. v. Brall, 124 Ill. 312, 16 N.E. 230; and Oakman v. City of Eveleth et al., 163 Minn. 100, 203 N.W. 514, 515. In the Oakman case, Wilson, C. J. speaking for the Supreme Court of Minnesota, expressed the principle clearly in the following words:

"It would be a reflection upon justice to say that a city could sue and be sued, but that it must always carry the litigation to final judgment. The power to compromise grows out of and is incident to the power to sue and be sued. This power embraces the power to finish litigation, decide how far it shall be carried, and when and in what manner it may end. * * *"

There is nothing in the Charter of the City of Columbus, nor in the laws of the State of Ohio, to remove the instant case from the operation of the general principle. It follows therefore, that the power to compromise and settle the present litigation rests with the City of Columbus.

■ Council of the City has passed the ordinance providing for settlement of this litigation and distribution of the fund, including its division with the Gas Company. The ordinance has been approved by the Mayor and accepted by the Gas Company. Now, however, the City Attorney has refused to sign the consent decree based upon the ordinance and appears herein contending that unless this be a rate ordinance, Council is without power to enact it. The City Attorney does not contend that he, in his official capacity, has the power; it is merely contended that Council does not have it. After careful examination of the Charter of the City of Columbus, this Court is of the opinion that Council does have the disputed power, and further, that Council is the only agency of the City which does possess that power.

The third contention of the City is based upon Sec. 45 of the Charter of the City of Columbus, which reads as follows:

"Sec. 45. Ordinances submitted to the council by petition and passed by the council as herein provided, shall be subject to the referendum in the same manner as other ordinances.

"Ordinances rejected or repealed by an electoral vote shall not be reenacted, in whole or in part, except by an electoral vote.

"* * * * * *."

It is said that Ordinance No. 140-41, by which settlement is now sought of the issues herein, was included in Ordinance No. 337-40 passed by Council, but rejected by the people in a general election of November 5, 1940, and that for this reason No. 140-41 cannot be legally effective until it has been submitted to, and approved by the electorate. This phase of the question resolves itself into one inquiry and that is, whether or not Ordinance No. 140-41 constituted, either the whole or a part of Ordinance No. 337-40 and in this respect, mere words contained in the ordinances cannot be divorced and separated from the basic purposes involved.

The ordinance now in question is one for the settlement of this litigation. The issue presented by this defense is whether or not this ordinance was presented to the electorate in Ordinance No. 337-40. Admittedly the earlier ordinance did contain provisions for the settlement of this litigation and admittedly there are strong similarities between some of the provisions of the earlier ordinance and that now under consideration. But there is a point beyond which ordinances may not be theoretically divided in considering whether or not they constituted a part of other ordinances. The basic purposes to be served by the ordinances must be kept in mind. The words of the English language which are in customary usage are comparatively few in number and these few are often and repetitiously used. Therefore ordinances are not necessarily the same just because they have words or phrases in common; nor does it follow that they are the same because both seek to accomplish the same purpose. In the instant case, the burning issue is not that both ordinances presented propositions of settlement but whether the two propositions, so presented, were the same.

■ The present ordinance constitutes a purported settlement of this litigation. It is urged that this same purported settlement was included in the former ordinance. Therefore it must be kept in mind in comparing the provisions of the two ordinances that we are of necessity comparing them as ordinances to serve the same purpose, that is, settlement. If it be said that the first ordinance was one of settlement, then it must at once be admitted that the proposed terms of settlement included within themselves provisions for a marked increase in gas rates for several years in the future. No artificial or theoretical drawing of distinctions can convert the first

ordinance into an ordinance comprised of two separate and distinct parts; that is, one part offering a non-interdependent settlement and the other, an increased rate. These features are inextricably interwoven and in so far as the first ordinance constituted a proposed settlement, it carried with that proposed settlement, and as one of the principal conditions thereof, the future rate question. It follows therefore that the propositions of settlement made in the first and second ordinances are in no sense the same.

It is the considered opinion of this Court that Section 45 of the Charter of the City of Columbus had but one intent and but one purpose; that is to prevent Council from enacting into law an ordinance which the people have once said by their votes that they did not want. This Court finds that the Ordinance No. 337-40 did not contain the Ordinance later passed as Ordinance No. 140-41, and further finds that the settlement now proposed was never at any time rejected by the voters of Columbus. It may be further said that where, as in this case, a settlement proposed in the first ordinance consists of certain provisions which would be unobjectionable to the electorate, but where these provisions are coupled with others which are highly objectionable, it cannot be said that a proposal for settlement made in a later ordinance, eliminating most of the objectionable features and retaining the beneficial and unobjectionable features, must be submitted to the people upon the theory that it has once been rejected by them in the earlier form. To hold otherwise would be to require in such case that if any settlement is proposed and is rejected by the people, all future proposals must be submitted regardless of terms.

 Two other circumstances which have some persuasive value, but which of course could not be decisive of the issues presented, should probably be mentioned in connection with the City's third defense. First, there is a presumption of validity in favor of the ordinance passed by City Council as No. 140-41; and Second, there is a provision in the City Charter by which the electors could have brought the ordinance to a referendum vote. This was not done, and in view of these circumstances, this Court cannot indulge the supposition that Council acted in anything but the utmost of good faith, or that the people of Columbus would have desired any different action than that taken by Council. It may be added also that if the City Attorney was convinced that Council was exceeding its powers in passing the ordinance in question, he could have sought to restrain them in the State Courts as provided by Sec. 4311, Ohio General Code, or Sec. 71 of the Charter, which would have been the most direct method, but which he did not do. Perhaps these matters are of more or less minor importance, but they are at least entitled to mention in passing.

The Court having disposed of the various defenses of the City upon their legal merits comes now to a number of matters which perhaps could not legally be considered or given weight in the determination of the issues, but which should, in the opinion of the Court, be mentioned in this memorandum.

This proceeding has been in process of litigation since April 29, 1925, and during the last several years, the impounded fund has been deposited in a noninterest-bearing account. No matter what determination might have been made by the Court in the disposition of this case upon its full merits, it is safe to assume from the past, that every appealable feature would have been carried to the Circuit Court of Appeals. It is possible that it would then have been remanded to this Court for further action; again appealed to the Circuit Court of Appeals and to the Supreme Court of the United States, with the ultimate possibility of being sent back to this Court to begin all over again. It is safe to declare categorically that any equitable settlement must redound to the benefit of all parties concerned. In this same connection, it may be added that by the form of a stipulation entered into by counsel for the City and counsel for the Gas Company at the time of the second reference, the record as it is now made up could have been carried to the Court of Appeals upon possible error, if any, committed by the first Master, by the late Judge Benson W. Hough, by the present Judge, and by the second Master. The right of appeal as to each and all having been preserved and with them, the seeds of many fruitless legal battles, profitable to no one. In a case of this nature involving as it does broadly diversified technical issues of law and fact, some of the most important issues of law being without guiding precedent, it is inconceivable that some appeal-

able error could not have been found. If it should have been held that this case must of necessity have been finally and fully determined by litigation, it is utterly impossible to estimate the possible cost or the number of years that would have passed before those entitled thereto would have derived any benefit from the impounded funds. Settlements in such cases should be encouraged and they should not be defeated upon any "super-technical objections."

█ It may be observed that some of those who are more or less directly interested, may feel that in spite of such considerations as the foregoing, the City should not have entered into any form of compromise. This, however, was a discretionary matter resting with the City, and with which when exercised in good faith, the Court is not concerned and may not interfere. However, there were many factors to be considered by those who assumed the responsibility for the settlement and such factors were no doubt fully considered. In justification of their decision, it may be pointed out that the position of the City is not as advantageous, perhaps, as it may have been in the past, and as representatives of the City they no doubt gave weight to such factors.

Early in this litigation, when the fund was impounded, the question as to who was entitled to the difference between the 40¢ and the higher amounts collected was a wide open one. Subsequently thereto, the Circuit Court of Appeals for the Sixth Circuit held that the City had not only failed to appeal from the order of Judge Hough which permitted the Gas Company to take down the difference between the 40¢ and 48¢, but had agreed and acquiesced therein. It would therefore appear that this much of the original case has already disappeared without action by either council or the electorate.

Another feature of the case which has radically changed is that relating to the so-called gate rate contracts. These were the contracts under the terms of which the Gas Companies herein purchased their gas from the selling company. In its early defense of the 40¢ ordinance, the City laid great stress upon the fact that the stock in both the selling and buying companies was owned by the same parent company, and further, that by the terms of these contracts the cost price was the basis for fixing the selling price, and the selling price was itself used as the basis of the cost price. This question of the validity of the gate rate contracts was, of course, one of the most important issues because the direct question of cost of gas sold was directly involved. The Circuit Court of Appeals pointed out these peculiar conditions when remanding the case to this Court and directed that the validity of the contracts be tried out and determined. However, when the second reference was made, the question of the validity of these contracts was stipulated out of the case by counsel for the Gas Company and for the City, it being agreed that they should be regarded as valid.

As the Court has before stated, all of these matters are not directly enough related to the legal issues herein to be determinative, but Council of the City of Columbus was entitled to consider them in agreeing upon the terms of a settlement, and this Court may certainly notice them in considering the validity of the ordinance passed by Council to effect the settlement.

In concluding this memorandum, the Court desires to point out that, although Council passed the ordinance here in question and the Mayor of the City approved it, both acting in their official capacities and for and in the name of the City, neither the Mayor nor any Members of Council have taken any step to retract their acts or approval. Objection here is made in the name of the City by the City Attorney, the net result being that in this instance the real controversy is not so directly between the City and the Gas Company as it is between the various agencies of the City of Columbus. The Gas Company is concerned simply because one agency of the City refuses to carry out the determination of two other agencies, and the Gas Company thus has its agreed settlement rendered ineffective.

It is the considered opinion of this Court that Ordinance No. 140-41 was legally enacted and that it is now in full force and effect. It follows, therefore, that the City of Columbus has failed to show cause why a consent decree disposing of this litigation should not be entered as prayed for in the supplemental complaint filed herein by the complainant on May 6, 1941, and the motion of said complainant for judgment on the pleadings as filed May 20, 1941, is sustained.

Entry accordingly.