Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

John Cleveland MARTIN, Jr., and William Justin Martin, Defendants.

Civ. A. No. 1068.

United States District Court
S. D. Mississippi, E. D.
Oct. 30, 1961.

97. The test for determining both of these questions is, in this case, the same.

Charles Donahue, Sol., Washington, D. C., Beverly R. Worrell, Regional Atty., Hubert F. Owens, Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

M. M. Roberts, Hattiesburg, Miss., Stanford Young, Waynesboro, Miss., for defendants.

COX, District Judge.

The Secretary of Labor has sued John Cleveland Martin, Jr., and William Justin Martin under 29 U.S.C.A. § 217, to restrain violations of § 215 of the Act known as the Wage and Hour Law. The period of time involved is November 14, 1958, to November 14, 1960. Until December 30, 1960, William Justin Martin was a partner with his brother, John Cleveland Martin, Jr., doing business as J. C. Martin Lumber Company in the conduct of a country sawmill operation at Waynesboro, Mississippi. On the date mentioned, William Justin Martin sold his interest in this business to John Cleveland Martin, Jr., and has had no direct or indirect interest in said business since said time. In the main, the Secretary accuses the Defendants of violating the overtime, record-keeping and shipping provisions of the Act. A narrative statement of the facts is necessary to understand the circumstances here and such statement will operate as a finding of fact. This business was investigated by the Department in 1949 when it was operated by the father, J. C. Martin, now deceased. It was again investigated by the Department in 1954 when the business was operated by Mrs. Stagg as Administratrix of the Estate of J. C. Martin, Deceased. Those investigations were conducted by Mr. Brag and Mr. Nett, both of whom are very genteel, soft-spoken and mild-mannered gentlemen. Mr. Brag last investigated this business on November 13, 1960, and found what he termed minor discrepancies. These investigators in each instance made a routine investigation and did not impress the management on either occasion of the seriousness with which the Department viewed their neglect. The usual governmental regulations and administrative rulings were periodically left and some of the non-compliances were rectified on the occasion of each visit. The management was likewise affable and cooperative and promised rectification in each instance. This is a very small country sawmill operation which in years past probably supported the Martin family. It was started by the father, now deceased. In the past several years the owners have eked out a bare existence from this business and within a few months prior to the trial the business has ground to a stop under tremendous economic pressures upon the industry. The records kept by this small rural operator were not elaborate but were in cast with this crude operation. None of the prior investigations in anywise or to any extent foretold or gave any warning of the policy of the Plaintiff which he seeks to invoke and urge here for the first time. Neither investigator reported to the Department any stubbornness or wilfulness on the part of the Defendants or any failure or any refusal to cooperate with them but mentioned in his report and to the Defendants that he found minor irregularities or infractions which the Defendants promised to promptly rectify. An investigator on the witness stand answered the Court that he had not recommended the necessity for action to compel observance and compliance with the Act. John Cleveland Martin, sole owner of this business, evinced surprise at the belligerent attitude of the Department as con-

trasted with that of its representatives. He impressed me as being a very sincere and conscientious person who desired to comply in strict detail with every requirment of this Act and promised to do so. He impressed the Court as being a man of his word and his intentions were supported by positive action in that direction. After the last investigation, Mr. Martin undertook to the best of his ability in this type of operation to comply with the Act and instructed his bookkeeper to do so. In furtherance thereof a new system was inaugurated last June which the testimony showed was more than is required by the Act for the keeping of proper records. The bookkeeper (Mrs. Swan) was discharged in July on account of bad business conditions which resulted in a shut-down of the business a few weeks later. The business was closed in its entirety at the time of the trial and the prospect of resuming business was very much cast in doubt.

 The charge as to the fabrication or falsification of records is not sustained by the proof. The Court cannot find from a preponderance of the credible evidence and reasonable inferences that the Defendants ever worked a single employee in this business during this time in violation of the minimum wage or overtime provisions of this Act and, therefore, makes its finding to the contrary. As to the record keeping requirements of the Act, the proof shows that these records in the past have not been properly kept but the clear indications are that such discrepancies have been largely if not entirely rectified. The records as to the bookkeeper were never properly kept by her but she is no longer with the business and may never be in its employ again. Likewise, the records as to the foreman were not technically sufficient but those employees are not with this operation any more. This business is clearly covered by the Wage and Hour Act as being in the production of goods for commerce. It shipped substantial quantities of lumber during its operation in interstate commerce and was amenable to the requirements of the Act and the regulations of the Department. This Court sits as a court of equity in the trial of this case and is vested with the power to exercise a sound judicial discretion as to the issuance vel non of an injunction under the circumstances here. This is not just another private lawsuit between Mr. Goldberg and Mr. Martin. It is a public suit involving the public interest and welfare which must be considered by the Court in a proper exercise of a sound judicial discretion as to whether or not to issue an injunction as requested. The blight of an injunction with its far-reaching incidents and effects upon this prostrate business under the circumstances would defeat the purposes of the Act and kill this business and hurt this community and destroy a probable source of income during the winter for several needy families usually employed there. The violations proved are not serious and the Defendant clearly demonstrated his willingness and intention to voluntarily conform with the Act. The infractions were not wilful or defiant or even committed in inexcusable neglect under all of the existing circumstances. While ignorance of the law is no excuse and lack of modern facilities for a strict compliance of the Act likewise in strict law may not excuse even these discrepancies, still such circumstances must be considered in any proper appraisal and determination here. It is the opinion of the Court that the injunction at this time is not needed or necessary in this case and that it would not be in the public interest to grant it and would be injurious to the public welfare of this community under the circumstances. It is the view of the Court that the United States does not lose a case when it is denied an injunction in the exercise of the discretion vested in the Court but actually wins a case by the intercession and efforts of the Court in the proper discharge of its duty under the Act in weighing the equities and making a proper adjudication thereof. That is the import of the authorities on this subject. In Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754, Section 205 of

the Emergency Price Control Act provided that upon application of the administrator for an injunction that such injunction *shall* be issued without bond, yet the Court said:

"We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. [City of] Winter Haven, 320 U.S. 228, 235 [64 S.Ct. 7, 11, 88 L.Ed. 9]. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not believe that such a major departure from that long tradition as is here proposed should be lightly implied."

In Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332, the Court said:

"Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 552 [57 S.Ct. 592, 601, 81 L.Ed. 789]. Power is thereby resident in the District Court, in exercising this jurisdiction, 'to do equity and to mould

each decree to the necessities of the particular case.' Hecht Co. v. Bowles, 321 U.S. 321, 329 [64 S.Ct. 587, 592, 88 L.Ed. 754]."

There is nothing in Section 217 of this Act to even so much as indicate that it was the intention of Congress to mandatorily order an injunction upon mere request of the Secretary if, indeed, it could have done so. In Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520, it is said:

"The term 'discretion' denotes the absence of a hard and fast rule. The Styria, Scopinich Claimant, v. Morgan, 186 U.S. 1, 9 [22 S.Ct. 731, 46 L.Ed. 1027]. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

"It is familiar doctrine that the extent to which a court of equity may grant or withhold its aid, and the manner of moulding its remedies, may be affected by the public interest involved. Central Kentucky [Natural] Gas Co. v. Railroad Commission, 290 U.S. 264, 271 [54 S.Ct. 154, 157, 78 L.Ed. 307].; [Commonwealth of] Pennsylvania v. Williams, 294 U.S. 176, 185 [55 S.Ct. 380, 385, 79 L.Ed. 841]; Virginian Railway Co. v. System Federation, 300 U.S. 515, 522 [57 S.Ct. 592, 81 L.Ed. 789] et seq." United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211.

The better reasoned authorities from this Circuit are to the same effect. In Mitchell v. Hodges Contracting Company, 5 Cir., 238 F.2d 380, 381, the Court said:

"The Secretary correctly recognizes that injunction, though authorized as a specific sanction under the Act, § 17, being equitable in nature, need not issue as a routine, absolute consequence of a finding of non-compli-

ance and the existence of coverage. For the granting or denial of an injunction—and perhaps of greater importance, the delicate drafting of its terms—must inevitably be left initially to the sound discretion of the District Judge, Walling v. Florida Hardware Co., 5 Cir., 142 F.2d 444. It is he who has seen unfolded the intimate details of the controverted activity, the approach and attitude of the parties reflecting the circumstances giving rise to the controversy, the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contrition under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance and many other similar and related factors from which the Judge can determine the probability of future compliance or violations.

"Where these have been properly evaluated, the action of the Trial Court, whether granting or denying an injunction, will be sustained."

Likewise, in Mitchell v. C. B. Bland, 5 Cir., 241 F.2d 808, 810, the Court said:

"Even assuming appellant's contentions to be sound in both instances, the Court would have been justified in either granting or denying injunctive relief under the broad discretion lodged in it by accepted equitable principles. Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F. 2d 380, 381.

"The trial Court evidently reached the conclusion that more could be accomplished towards enforcement of the law and towards bringing appellant into cooperative conformity with its provisions by withholding the drastic remedy of injunction than by using it.

"The nature of injunctive relief is that it is prospective, prophylactic, preventive,—not punitive. By bringing about a better attitude on appellant's part towards the Act, and his plighted purpose to obey it scrupulously and ungrudgingly, the Court below was using its equity powers in consonance with their best traditions.

"The problem before the Court below did not involve litigation between two private individuals only; it related primarily to the business of the public, and the public interest was entitled to primary consideration. A labor controversy was presented to the Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees, 1937, 300 U.S. 515, at page 552, 57 S. Ct. 592, at page 601, 81 L.Ed. 789, when it gave expression to this principle: 'More is involved than the settlement of a private controversy without appreciable consequences to the public * * * Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved * * *'".

In Mitchell v. Empire Gas Engineering Company, 5 Cir., 256 F.2d 781, 785, it is said:

"It should not be forgotten that the issuance of injunctions in cases such as this is discretionary, as it is in most of the situations where this equitable remedy may be granted. Fleming v. Jacksonville Paper Co., 5 Cir., 1942, 128 F.2d 395, modified Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Lenroot v. Kemp, supra [5 Cir., 153 F.2d 153]; United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; Mitchell v. Hodges Contracting Co., supra; 31 Am.Jur. 929, Labor § 721."

Accordingly, it is the judgment of the Court under the circumstances at this time that an injunction is denied but jurisdiction is expressly retained for a period of one year after this date to enable the Plaintiff to file any supplemental application showing any breach or violation by the Defendant of these provisions of this Act after this date for proper order thereon, failing in which this suit will be dismissed at the cost of the Defendant. The suit should be dismissed now against William Justin Martin. This opinion shall operate as the findings and conclusions of the Court under F.R.Civ.P. Rule 52, 28 U.S.C.A. An appropriate order may be presented to the effect indicated.