## BEASLEY v. TEXAS & PACIFIC RAILWAY CO.

### APPEAL FROM THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 79. Argued December 3, 1903.—Decided December 14, 1903.

A railroad company on receiving from the plaintiff a conveyance of 'and for its road agreed for itself and its assigns not to build a depot within three miles of one which it built on the land conveyed. Subsequently it sold its road to defendant which proposed to build a station within the three miles, in pursuance, as was admitted, of an order of the State Railroad Commission.

*Held* that the injunction should not issue.

*Quære* whether the burden of the contract passed to the defendant.

Whether a railroad station shall be built in a certain place is a question involving public interests.

If it appears to the court that it would be against public policy to issue an injunction against a railroad corporation the court may properly refuse to be made an instrument for such a result whatever the pleadings in the case may be.

The facts are stated in the opinion of the court.

*Mr. E. B. Kruttschnitt* and *Mr. W. P. Hall* for appellant:

The only question on this hearing is that of jurisdiction on the equity side of the court. Appellant has the right to be heard. *Mashall* v. *Tex. & Pac. Ry. Co.,* 136 U. S. 393.

This is a Louisiana contract affecting Louisiana property and is governed by Louisiana law under arts. 296, 298, Code; *Slaughter House Co.* v. *Larrieux,* 30 La. Ann. 799; *Levy* v. *Waterworks Co.,* 38 La. Ann. 29. The injunction should be granted; also under Federal law. *Boyce's Executors* v. *Grundy,* 3 Pet. 215; *Lewis* v. *Cocks,* 23 Wall. 470; *Kilbourn* v. *Sunderland,* 130 U. S. 514; Pomeroy's Eq. Jurisprudence, § 1357, vol. 3; *Payne* v. *K. & A. V. R. R.,* 46 Fed. Rep. 553; *The Walla Walla Case,* 172 U. S. 1. See also *Cam* v. *R. R. Co.,* 24 Pa. St. 159.

There is no necessity for a depot at the place proposed.

*Mr. William Wirt Howe, Mr. John F. Dillon* and *Mr. Walker B. Spencer* for appellee:

The decree of the Circuit Court of Appeals was not appealable to this court. *Moore* v. *Robins,* 18 Wall. 588; *Greene* v. *Fisk,* 103 U. S. 518; *Rice* v. *Sanger,* 144 U. S. 197; *Chicago &c. Ry. Co.* v. *Osborne,* 146 U. S. 354; *Brown* v. *Baxter,* 146 U. S. 619; *Meagher* v. *Minn. &c. Co.,* 145 U. S. 608; *Great Western Tel. Co.* v. *Burnham,* 162 U. S. 339.

The appellee is bound in the public interest, as well as its own, to build such stations along and near the railroad as the public convenience and the rapid and economical transportation of goods and passengers may require. It would be against public policy to enforce the contract sued upon in this case, as the complainant attempts to do, and the lower court properly reached the conclusion that the complainant at the bar can have no remedy in equity. *Tex. & Pac. Ry. Co.* v. *Scott,* 23 C. C. A. 424; *Florida &c. R. R. Co.* v. *State,* 31 Florida, 509; *People* v. *Chicago & Alton R. R. Co.,* 130 Illinois, 175; *Fuller* v. *Dane,* 18 Pick. 472; *St. Joseph &c. R. R. Co.* v. *Ryan,* 11 Kansas, 602; *Chicago R. R. Co.* v. *Seeley,* 45 Missouri, 212; *Curry* v. *Natchez &c. R. R. Co.,* 61 Mississippi, 725; *Mobile & Ohio R. R. Co.* v. *People,* 132 Illinois, 559; *Holladay* v. *Patterson,* 5 Oregon, 177.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Appeals ordering a bill against a railway company incorporated under the laws of the United States to be dismissed. The bill seeks to enjoin the railway company from building a depot within three miles of one already built at Uni in Louisiana, and alleges the following facts: Mrs. Beasley, the first named plaintiff, conveyed to a Louisiana corporation, the Texarkana, Shreveport and Natchez Railway Company, a strip of land, one hundred feet wide, for a railroad track through her plantation, habendum to the company and its assigns so long as the

railroad was maintained and operated over the strip.   By the act of sale, which was executed by both parties, it was declared to be a part of the consideration for the transfer "that the grantee or its assigns shall not build  .  .  .  or establish any other depot along the line of said railroad within three miles north or south of the one stipulated for."   The defendant purchased the road from the grantee "subject to the obligations and stipulations contained in" the act of sale.   It now is constructing a depot on the road within a mile and a fraction of the one at Uni.   The bill further alleges that there is no public necessity for a depot within the stipulated limits.   There was a demurrer for the reason that there is an adequate remedy at law, and the demurrer was sustained by the Circuit Court, and the bill dismissed.   This decree was reversed by the Circuit Court of Appeals, and the bill was ordered to be dismissed for want of equity without prejudice to an action at law.   115 Fed. Rep. 952.   There is a motion to dismiss the appeal to this court on the ground that the decree was not final in form, but the decisions are the other way, and the case being one in which the decree of the Circuit Court of Appeals can be reviewed in this court under the act of March 3, 1891, we have jurisdiction and the motion must be overruled.   *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131.   See *Great Western Telegraph Co.* v. *Burnham*, 162 U. S. 339, 342.

The act of sale gives its own definition of the word "depot," but no question is made that the depot intended to be built is within the prohibition of the instrument in that and other respects.   We assume that if the plaintiff's grantee had built the structure it would have broken its agreement.   We also assume for the purposes of the case, without deciding, that the contract as a contract is not void, although similar contracts have been pronounced void in some of the cases cited below. On these assumptions the question is how far the burden of that agreement passed to the defendant, and whether, at least as against the defendant, equity will require it to be specifically performed.

Such a liability, wherever asserted, would have to be worked out, if at all, in terms of easement, covenant running with the land, implied contract, or equitable restriction.

Although the Louisiana Code recognizes such servitudes "as the prohibition of building on an estate, or of building above a particular height," Rev. Civil Code, Art. 728 (724); see Art. 718 (714), and although it has been held at common law that such a servitude for the benefit of neighboring land may be created within reasonable limits, and created by words of covenant, *Ladd* v. *Boston,* 151 Massachusetts, 585, 588; *Brown* v. *O'Brien,* 168 Massachusetts, 484, compare La. Rev. Civ. Code, Art. 743 (739), it was not argued that there was an easement in this case. It would be questionable whether the obligation was "not imposed on the person or in favor of the person, but only on an estate or in favor of an estate;" La. Rev. Civ. Code, Art. 709 (705); Code Nap. 686; whether it was not in the words of Marcadé, commenting on this article of the Code Napoléon, a *servitude réelle entachée de personnalité.*" 2 Marcadé, 627. "There can be no praedial servitude when the object is merely to satisfy the wants of the present owner." Sohm, Inst. Roman Law, Ledlie's transl. § 56, II, p. 262. Apart from the peculiarities of Louisiana law, there would be almost equal difficulty in regarding the agreement as a covenant the burden of which ran with the land according to the principles of the common law, and for substantially the same reason. It is true that the covenant is negative, but it does not benefit the use and occupation of the plaintiff's land physically, and is not intended to. It is intended simply to improve the market value of that land by giving to it a right not to be competed with in the way of railway conveniences. *Norcross* v. *James,* 140 Massachusetts, 188, 192. As to an implied contract, that would be a fiction, and the plaintiff's rights, so far as the question of policy is concerned, would not be enlarged by adopting that form. See *Lincoln* v. *Burrage,* 177 Massachusetts, 378, 380.

Whether the true theory of equitable restrictions is the same

as that of covenants running with the land, or different, as their historical antecedents are different in part, it would seem that the two must have somewhat similar limits. With regard to injunctions, we see in Art. 298, 3, of the Code of Practise cited by the plaintiff, no reason to suppose that the law of Louisiana is peculiar in any way affecting the present case. Whatever the form which the attempt to restrict may take, obviously it is not desirable to allow large tracts of land to be tied up and cut off from the ordinary incidents of ownership, according to the invention of the owner, in perpetuity, in favor of other large tracts which may come by division into many hands. La. Rev. Civ. Code, Art. 656 (652). See *Parish* v. *Municipality No. 2*, 8 La. Ann. 145, 169. If such restrictions should be enforced without limit in equity as against all purchasers with notice, the practical result would be an unlimited extension of easements, since notice always can be secured by registration. Easements hitherto have been confined pretty narrowly both in quality and in space. Equitable relief has been refused upon a covenant by a grantee not to open or work a quarry upon his land adjoining the land conveyed, in a suit between assignees of the original grantor and grantee. It was a mere covenant against competition. *Norcross* v. *James*, 140 Massachusetts, 188. On the other hand, a covenant by a grantee not to sell sand from half an acre was enforced against the grantee's son and grantee in favor of the grantor in *Hodge* v. *Sloan*, 107 N. Y. 244, and in old times it would seem that a covenant in connection with a gift of a mill in Tenbury not to raise another mill in Tenbury might have been enforced against the heir of the covenantor. Y. B. 5 ed. III, 57, pl. 71; *S. C.*, 7 ed. III, 65, pl. 6, 7. Of course, there are numberless cases in which contracts have been enforced which in a more immediate sense affected the occupation and enjoyment of the *quasi* dominant land. It is to be noted, too, that the restriction is confined to a narrow strip, which very likely might have been subjected to a servitude of way.

We do not think it necessary to decide whether the foregoing

general considerations would be enough to prevent the burden
of this agreement falling on the defendant, or whether the
allegation which has been quoted, and which means no more
than that the defendant bought with notice, is enough to
establish a relation of contract or *quasi* contract between the
parties. There are more specific obstacles in the way of the
bill. Whether a railroad station shall be built in a certain
place is a question involving public interests. Assuming that
a contract like the present is valid as a contract, and making
the more debatable assumption that the burden of the contract
passed to a purchaser with notice, it does not follow that such
a contract will be specifically enforced. Illegality apart, a man
may make himself answerable in damages for the happening
or not happening of what event he likes. But he cannot secure
to his contractor the help of the court to bring that event to
pass, unless it is in accordance with policy to grant that help.
To compel the specific performance of contracts still is the
exception, not the rule, and courts would be slow to compel it
in cases where it appears that paramount interests will or even
may be interfered with by their action. It has been intimated
by this court that a covenant much like the present should not
be enforced in equity, and that the railroad should be left at
liberty to follow the course which its best interests and those
of the public demand. *Texas & Pacific Ry.* v. *Marshall*, 136
U. S. 393, 405; *Northern Pacific Railroad* v. *Territory of Wash-
ington*, 142 U. S. 492, 509. See further *Marsh* v. *Fairbury,
Pontiac & Northwestern Ry.*, 64 Illinois, 414; *People* v. *Chicago
& Alton Railroad*, 130 Illinois, 175, 184; *St. Joseph & Denver
City Railroad* v. *Ryan*, 11 Kansas, 602; *Pacific Railroad* v.
*Seely*, 45 Missouri, 212; *Florida Central & Peninsular Railroad*
v. *Florida*, 31 Florida, 482, 508; *Currie* v. *Natchez, Jackson &
Columbus Railroad*, 61 Mississippi, 725, 731; *Holladay* v. *Pat-
terson*, 5 Oregon, 177; *Texas & Pacific Ry.* v. *Scott*, 23 C. C. A.
424, 429.

The difficulty is illustrated as well as made greater in the
case at bar. There is in Louisiana a railroad commission hav-

ing authority to require all railroads to build and maintain depots. La. Const. 1898, Art. 384. That fact is enough to suggest the possibility of a conflict if an injunction were granted. But further, although it was not pleaded, it was admitted at the bar that the commission had ordered the erection of the station in dispute. It is true that this admission was coupled with charges of improper influence. But such imputations would not be tried or listened to in a collateral proceeding like this. It is apparent therefore that if the facts appeared of record an injunction would be denied, and that as soon as they do appear it must be denied, so that a trial would be an idle form. The bill alleges that there is no public necessity or demand for a depot within the stipulated limit. But this no more could be tried for the purpose of collaterally impeaching the decision of the railroad commission than could the purity of their motives.

It is objected that the foregoing was not the ground of the demurrer. But as was observed by the court below, other grounds are open on demurrer *ore tenus*, and apart from that consideration, if it appears that an injunction would be against public policy, the court properly may refuse to be made an instrument for such a result, whatever the pleadings. The defendant may desire the relief to be granted. It is suggested that it does. But the very meaning of public policy is the interest of others than the parties and that interest is not to be at the mercy of the defendant alone. See *Northern Pacific Railroad* v. *Territory of Washington*, 142 U. S. 492, 509.

*Decree affirmed.*

MR. JUSTICE BREWER concurred in the result.

MR. JUSTICE BROWN took no part in the decision.