**CROSLEY RADIO CORPORATION v. DART.**

No. 10265.

Circuit Court of Appeals, Sixth Circuit.

March 24, 1947.

Fred Gerlach, of Chicago, Ill. (Fred Gerlach, of Chicago, Ill., and I. Joseph Farley, of Detroit Mich., on the brief), for appellant.

Ralph L. Chappell, of New York City (Ralph L. Chappell and Kenyon & Kenyon, both of New York City, and George McArthur, of Mason, Mich., of counsel; McArthur & McArthur, of Mason, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

The problem presented for solution by the appeal involves the interpretation of a written contract entered into by the parties to the present controversy, for the assignment of a patent application including the granting of an option to the purchaser for an exclusive license under other patents to be carved out of the parent application and to be made the subject of divisional applications. While no question of validity or infringement is here presented, decision nevertheless requires claim analysis and interpretation.

The inventor was the appellee, Dart. He had conceived an improvement in a door and its components, for iceless refrigerators. His general idea was that of a double-doored refrigerator with shelves on the inner door for storage of frequently used foods, a cutaway panel to permit access to the ice-cube chamber without exposing the rest of the box and a latching mechanism to permit opening the outer door independently or both doors simultaneously. On March 8, 1934, he had filed an application for his invention which listed six claims, to which, on June 13, 1934, three additional claims were added. All were combination claims including, as elements, not only the improved door but the conventional refrigerator with its cooling unit, a latching means, a cutaway portion of the inner door aligned with the ice-cube chamber and a specific type of hinge.

On April 12, 1935, Dart entered into a written contract with appellant Crosley, whereby he assigned his application to Crosley, but reserving therefrom "the features of the Dart invention which include the particular type of door latch, the particular type of hinge for the doors, and the particular type of cut-out inner panel or door as described in the copy of the application attached, as the prosecution of said application in the United States Patent Office appears to warrant." The considera-

tion for this assignment was the payment of $1500 by Crosley to Dart and an undertaking by Crosley to prosecute at its own expense a divisional application previously prepared, upon which it was thought the reserved inventions would receive independent patent protection. The contract also granted to Crosley an exclusive license to use the claims of the divisional application upon the payment by Crosley of royalties at ten cents a unit. If the royalties did not reach $5,000 in any one year, Crosley was to reassign the divisional patent to Dart. The option was to be taken up, if at all, not later than six months after the issuance of a patent. A copy of the divisional application was attached to the contract, containing three claims covering a latch, a cut-out panel and a hinge, each in combination with "a refrigerator having a compartment formed between separately hinged inner and outer doors, and having a shelf storage compartment there between."

The status of the basic or parent application at the time of the agreement is important. Prior to its filing in the Patent Office, one Canton had, on November 2, 1932, filed an application involving the same general inventive concept, and on September 10, 1934, an interference had been declared between Canton and Dart and also between Dart and the application of one Zahodiakin.

On January 15, 1935, Zahodiakin had assigned all his rights to Crosley.

At the time the agreement was entered into between Dart and Crosley, the firm of Allen and Allen, patent attorneys of Cincinnati, Ohio, were acting for Crosley. It was understood that they would prosecute the assigned application in the Patent Office. It was also understood that they would prosecute the divisional application for Dart, but at Crosley's expense, and to that end Dart executed a power of attorney appointing Allen and Allen his solicitors, replacing Dart's original patent counsel. Allen and Allen proceeded with both prosecutions. As, by the phrasing of the assignment, it was expected, the claims of neither application were allowed as originally drawn. Amendments were from time to time made, claims were rewritten to meet objections of the examiner, claims were withdrawn and new claims added. It is, we think, unnecessary and would unduly extend this discussion, to narrate in full the Patent Office history. It will suffice at this point to say that on August 18, 1936, a patent No. 2,051,132, issued upon the original application, with the four claims printed in the margin.[1] While its prosecution was pending the Canton application was, on May 24, 1935, assigned to Crosley, and on September 30, 1935, Dart signed a concession of priority to Canton for claims 8 and 9 of

1. In combination with a refrigerator having a cooling unit and a food compartment, inner and outer doors for said refrigerator, hinges connecting said doors to the refrigerator, a latch between the outer door and the refrigerator, a latch between the inner and outer doors and operable from the exterior of the outer door, and said inner door having a cut away portion to expose the cooling unit when said inner door is in a position to close the food compartment.

2. In combination with a refrigerator having a cooling unit and a food compartment, inner and outer doors for said refrigerator, hinges connecting said doors to the refrigerator, a latch between the outer door and the refrigerator, a latch between the inner and outer doors and operable from the exterior of the outer door, said inner door having a cut away portion to expose the cooling unit when said inner door is in a position to close the food compartment, said outer door having a chamber, and a rack carried by

the inner door and received within the chamber.

3. A device of the character set forth comprising inner and outer doors mounted for swinging movement, a latch for the outer door, a bracket carried by the outer door, a member rotatably supported by the bracket, a keeper carried by the inner door, an arm on said member to engage with the keeper, a finger piece slidably mounted to the outer door and receiving said member, a spiral drive between said finger piece and the member for imparting rotation to the latter, and a spring between the bracket and the finger piece.

4. In combination with a refrigerator having a cooling unit and a food compartment, inner and outer doors for said refrigerator, hinges connecting said doors to the refrigerator, a latch between the outer door and the refrigerator, a latch between the inner door and the refrigerator, means operable exteriorly of the refrigerator for releasing the latch on

his amended original application. They were then canceled from the Dart application and placed by Crosley in the Canton application. It is now contended that they covered the broad inventive concept of the Dart invention assigned to Crosley, and inferentially everything that Dart sold.

Meanwhile the divisional application was having harder sledding in the Patent Office. It was prosecuted by Allen and Allen with combination claims, including as elements the cut-out inner panel, the latch and the hinge. The claims were all rejected by the examiner as aggregative. The solicitors then canceled the claims which included the latch and hinge as elements, filed separate divisional applications for combinations which included the particular latch and the particular hinge as elements, and by amendment confined the original divisional to combinations including the cut-out inner panel. Each of the three divisional applications was vigorously prosecuted. After various rejections, argument, amendment, withdrawal of original and submission of new claims, the first divisional application became patent No. 2,122,680, and was turned over to Dart on July 5, 1938. Its claims were combination claims substantially as in the original divisional application made part of the assignment contract. The divisional application directed to the inclusion of the latch in combination, was rejected by the Patent Office; the claim was narrowed though still in combination, and was again rejected on the ground that the combination was fully covered by the parent patent. The solicitors then canceled the combination claims and inserted claims directed specifically to the latch. These were fought through to the Board of Appeals and eventually, in June, 1940, became patent No. 2,204,053, which was likewise turned over to Dart. The hinge application in combination was rejected. New combination claims were likewise rejected as identical with the claims of the parent patent, and a claim directed to the hinge alone, was rejected on prior art, with rejection sustained by the Board of Appeals.

Based upon history thus sketchily delineated, Dart's theory was that by amendments to the parent application upon which patent No. 2,051,132 issued, the solicitors obtained for Crosley combination claims which covered inventions reserved by Dart from his assignment to Crosley; that by so doing and by Crosley giving a license under the parent patent to Fairbanks, Morse and Company (later assigned to Philco), Crosley had, in effect, though expressly declining to do so, exercised its option to accept a license for the reserved inventions, and was therefore obligated to pay Dart $5,000 a year from the date of the parent patent to its expiration, or until Crosley reassigned the patents to Dart; that Crosley had made it impossible for Dart to negotiate a license agreement with Philco or to obtain in the divisional application claims to the reserved inventions. Upon this theory Dart planted his suit. Crosley contended that all that Dart had reserved was the particular cut-out panel, latch and hinge described in his original divisional application; that the solicitors had obtained for Dart all that it was possible to get from the Patent Office; that for itself it had secured only the basic invention originally disclosed by Dart, or what was left of it after the concession of priority to Canton; that it had expressly declined to exercise its option for license under the divisional patents; and that to reassign the parent patent to Dart would leave it nothing in exchange for its payment to Dart and the substantial expense incurred in obtaining for Dart the divisional patents. The court accepted Dart's interpretation of the contract and the claims, and after four years of cogitation gave judgment for Dart, with findings of fact and conclusions of law adopted verbatim from Dart's proposals.

▮▮▮ We have given careful consideration to the specific language of the assignment agreement, to the language of the claims in the parent and original divisional applications and to the claims of the several patents as issued. Dart reserved from the assignment agreement his "particular"

---

the inner door, said inner door carrying a rack of shelves, and having a main panel lying between the main food compartment and said shelves, said panel being

so dimensioned as to permit the passage of refrigerated air from the cooling unit to said rack of shelves.

cut-out panel, latch and hinge. The word "particular" must be given significance. It is axiomatic that assignments and grants of patent rights are subject to the same rules of construction that apply to contracts generally, and that the intention of the parties should be carried out in construing them.

It must conclusively be presumed that when Dart sold his invention to Crosley that, as disclosed by his original application and subject to the reservations excluded therefrom, it denoted a meritorious advance upon prior art and an operable device. There is no contention that in his concession of priority to Canton he was in any way mistaken, or had been misled by Crosley or the solicitors, and it must also be assumed that his claims, though limited by the reservations, were for a meritorious concept independent of what had been conceded to Canton. It would seem to be clear from his specification, that Dart was not the originator per se of a double-door refrigerator. To give operability to such contrivance and to achieve its objectives, hinges and latches were required, at least of the generic type that found their way into the claims of the parent patent, and without some type of cut-out panel the principal objective of Dart's basic inventive concept would have completely failed of materialization and be barren of utility. So what was indicated in the reservations by the term "particular," must have been something peculiarly original with Dart and not to be found in prior art, independently or in combination. His present counsel make much of the fact that the phrasing of his reservations relates not to a particular cut-out panel, latch or hinge, but is directed to "all rights to a previously assigned divisional application which includes the particular type of door latch, the particular type of hinge for the doors and the particular type of cut-out inner panel." This adds nothing, however, to the argument, since Dart sought combination claims to inventions conceived by him to differ from the subject matter of his assignment, and so the word "includes" signifies nothing more than that his particular elements were to be combined with conventional elements into a new and separable combination.

Nor does the fact that Allen and Allen, on Dart's behalf, diligently prosecuted the combination claims of his original divisional application, indicate concession by Crosley that its obligation was to secure for Dart, at all events, combination claims, even though in so doing it was compelled to surrender the combination it had purchased, or to accept a result valueless in respect to utility. Allen and Allen were acting for Dart, and it was their duty to get for Dart all that he thought he should have, within the area defined by the clause "as the prosecution of said application in the United States Patent Office appears to warrant."

Dart's solicitors succeeded in obtaining combination claims for Dart's particular cut-out panel, substantially as disclosed in his divisional application. Claim 2 of that application described the cutaway portion as "aligned with the ice-cube chamber." This concept, though otherwise delineated to avoid prior art, found its way into the claims of the divisional patent granted to Dart, and there is nothing in the file wrapper history to indicate that a broader claim could have been obtained or that the claim was restricted or narrowed by reason of the claims of the parent patent.

Dart was denied combination claims, including his particular type of latch, because, as drawn, they would have collided with the claims of the parent patent, limited as they were to means operable to open the doors "independently or con-jointly." Such generic latching means were, however, indispensable to the effectuation of Dart's basic concept, and as such must necessarily have been included in the parent patent, if indeed they had not already been conceded to Canton. This is not the place to commend or condemn Patent Office decisions, since they were, by the contract, made the measure of Crosby's obligations, yet the rejection of the combination latch claims seems to conform to the doctrine announced by us in Kodel Elec. & Mfg. Co. v. Warren Telechron Clock Co., 6 Cir., 62 F.2d 692, 694, that "If a later invention consists solely of the improvement of one of the devices theretofore forming a part of an old combination, which improvement enables that device to perform its separate

function in a more efficient and useful manner, * * * but does this without change in mode of operation of that combination, the patentee of the improvement may have a patent which will cover his improvement; but he may not claim the broader combination * * * for the concept of this combination of means, regarded as a unit, was not his, and it was not new." In any event, even when Dart's claims were, in his divisional application, confined to his specific latching means, his solicitors were unable to secure a patent thereon until he had added a specific limitation found neither in the parent patent nor in his original divisional application, but which was forced upon him by prior art, and then only by securing a reversal of primary decision in the Board of Appeals.

No further notice need be taken of the third divisional application relating to Dart's particular hinge structure. His claims were rejected, both in combination and as a separable invention, even though they had been energetically prosecuted to the Board of Appeals.

■ Much reliance is placed by the appellee upon so-called findings of fact by the district judge. But the problem here presented involves the interpretation of a written contract. No contention is made that the writing did not express the agreement of the parties. In construing the contract we are confronted with a legal question within the competence of this court to decide. Even were we to consider determinations of the court as findings of fact, binding upon us unless clearly erroneous, there would be doubt whether, under the mandate of Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c, that "due regard shall be given to the opportunity of a trial court to judge of the credibility of the witnesses," findings adopted verbatim in the language of prevailing counsel after a four year interval, merit the regard which the rule contemplates. This, however, we are not required to decide.

■ While Crosley tendered to Dart a reassignment of claims 1, 2 and 3 of the parent patent, retaining claim 4, and the tender was refused, decision is in no wise affected thereby. This was but a compromise offer to save a harrassing lawsuit. Settlements are favored in the law,—their failure does not alter the rights of the parties.

■ A further word needs to be said in view of the argument of Dart's counsel. It is urged that Crosley was a fiduciary in that it had undertaken to prosecute claims for Dart's reserved inventions and so was under obligation to get all that Dart thought he ought to have, an obligation it failed in good faith to perform. But Crosley could carry out its obligations only through patent counsel. Allen and Allen were counsel for Dart with a broad power of attorney from Dart, and with full knowledge that they were also acting for Crosley. The implication, therefore, inescapably follows that Allen and Allen somehow contrived to get more for Crosley than the agreement provided, and neglected to secure for Dart all that he had reserved. Not only does the record wholly fail to support such implication, but it abundantly discloses that as solicitors for Dart, Allen and Allen prosecuted Dart's applications with the utmost of diligence, promptness and persistence, and it also becomes necessary to say that they are Cincinnati attorneys who frequently appear as patent counsel in this court, compelling respect both for their integrity and professional competence. Compare Hazeltine Research Corp. v. Freed-Eisemann Corp., D.C.E.D.N.Y., 3 F.2d 172.

■ Our conclusion is that Dart's reserved inventions must be construed in the language of the assignment as particular concepts differing both from prior art and what was included in his assignment to Crosley; that as such separable inventions Crosley obtained for Dart claims as broad as it was possible to secure, in view of the decisions of the examiner and the Board of Appeals; that Crosley has carried out to the full extent, its obligations under the assignment agreement; and has exercised no option for license under the divisional patents. It follows that the decree below is erroneous and should be set aside.

Reversed, and the cause remanded to the district court with instructions to dismiss the bill.