**UNITED STATES of America, for the use and benefit of AMERAY CORPORATION, Appellant,**

v.

**Ray M. LEE, individually, trading as RAY M. LEE COMPANY, et al., Appellees.**

**No. 16629.**

United States Court of Appeals
Fifth Circuit.

Dec. 6, 1957.

 

Herbert L. Nadeau, Miami, Fla., Anderson & Nadeau, Miami, Fla., for appellant.

Cromwell A. Anderson, Miami, Fla., Smathers, Thompson & Dyer, Miami, Fla., of counsel, for appellees.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal presents the question whether the trial court correctly construed a written subcontract, consisting of a purchase order and plans and specifications as amended. It is a suit by a subcontractor against the general contractor for compensation for the furnishing by it of alleged extras in furnishing lead protection for the X-ray and cystoscopic rooms of a government hospital.

Tried by the court without a jury, the case was submitted on nothing of relevance to the real issue but the purchase order, the specifications as amended, a few of the 57 sheets of drawings or plans prepared by the general contractor, and shop drawings of the plaintiff. The case being one for construction of language and drawings within the four corners of the several instruments, is to be determined as a question of law on which the reviewing court is permitted to consider the issue freed of any presumption of correctness of the interpretation by the trial court. United Artists Corp. v. Strand Productions, 9 Cir., 216 F.2d 305, 306; Crosley Radio Corp. v. Dart, 6 Cir., 160 F.2d 426.

The purchase order required the furnishing by plaintiff, Ameray, of "all lead insulated partition blocks, sheet lead for floors, lead protection for ceilings, lead lining for door frames, etc. in accordance with Plans and Specifications 30 and 35 and paragraphs 15–27 of Section 15 of the Specifications, as modified by applicable provisions of amendments Nos. 1 and 2 * * *" We find no reference in the record to Specification 35 or paragraphs 15–27 of Section 15 of the Specifications, but there was introduced in

evidence Section 30 of the Specifications, the material parts of which here are:

\* \* \* \* \* \*

"30–01 Scope: The work covered by this section of the specifications consists in furnishing all plant, labor, equipment, appliances and materials and in performing all operations in connection with X-ray protective construction, complete, in strict accordance with this section of the specifications and the applicable drawings, and subject to the terms and conditions of the contract.

"\* \* \* \* \*

"30–04 General: \* \* \*

"b. Rooms requiring X-ray protective work are C–113 Radio and Fluoroscopy, C–116 Radiographic and A–205 Cystoscopy. Exterior walls of Rooms C–113 and C–116 will not require X-ray protective work.

"c. Shop Drawings shall be submitted to the Contracting Officer for approval. The shop drawings shall show complete details of construction and conditions of X-ray protection and cuts of equipment proposed to use.

"\* \* \* 30–05 Materials: \* \* \*.

b. Sheet lead: All rooms indicated to have lead lining for floors, walls and ceilings in accordance with drawings shall have lead lining of the various thicknesses indicated for varying locations. \* \* \*"

(Later amended to read):

"All rooms indicated to have lead lining for floors, walks [sic] and ceilings in accordance with drawings shall have lead lining of 6 pounds per square foot, approximately .101 inch thickness."

"\* \* \* 30–07 Installation:

"a. Lead Insulated Partition Blocks: \* \* \*. Lead insulated partition blocks shall be installed for the full height of the wall or partition from floor to underside of the structural slab above.

"b. Floor Linings: Cover with sheet lead of indicated thickness the floors of rooms shown on the drawings requiring X-ray protection. Ceiling protection where shown on the drawings shall be in floor above the space being X-ray protected. \* \* \*."

(Later amended to read):

"Cover with sheet lead of indicated thickness the floors of rooms shown on the drawings requiring X-ray protection. The ceilings of all rooms receiving X-ray protective work, and having occupied areas above shall be protected."

Under the liberal pleading permitted under the Federal Rules, plaintiff did not specify what materials it furnished beyond its contract, but on the trial its contention was twofold: (1) It claimed that although specification 30–07 provided expressly that "lead insulated partition blocks shall be installed for the full height of the wall or partition from floor to underside of the structural slab above," an amendment to a different paragraph relating to Floor Linings to the effect that "the ceilings of all rooms receiving X-ray protective work, and having occupied areas above shall be protected" had the effect of eliminating the requirement for protected blocks in that part of the walls between the ceiling of the room below and the floor slab of the room above, an item of some $2,132.10. Plaintiff contended that there would be no need for carrying the lead insulated wall block above the "ceiling," by which it said was meant the false ceiling, because this ceiling was lead protected and this would prevent any X-rays from projecting beyond the room. The answer to this is that the modification does not clearly indicate that there is a change in the original plan to have the protective lead covering in the floor slab of the floor above rather than in the false ceiling. An even more conclusive answer is that the specific requirements of specification 30–07(a) as to the height of the protective wall were not modified by the amendment.

The paragraph amended was an unrelated paragraph, 30–07(b). This merely removed the requirement that the ceiling protection be part of the floor slab. Protection of the "ceiling" by incorporating the lead in the floor slab of the upper floor was still permitted. So far as the record shows that is where it was installed. The precise terms of 30–07(a) cannot be modified by the amendment to 30–07(b) dealing with a different subject, and with which it was not inconsistent.

■ (2) The plaintiff's second contention hardly merits discussion in light of the clear provisions of the contract. The purchase order covered "all sheet lead for floors * * * in accordance with Plans and * * * Specifications, as amended."

Specification 30–04(b) provides specifically that "Rooms requiring X-ray protective work are C–113 Radio and Fluoroscopy, C–116 Radiographic and A–205 Cystoscopy." The drawings introduced by defendant and which plaintiff's witness testified were used for preparation of plaintiff's shop drawings show the three rooms mentioned above under their designations, thus clearly showing them to *require X-ray protection.* Section 30–07(b) Floor Linings, provides: "Cover with sheet lead of indicated thickness the floors of rooms shown on the drawings *requiring X-ray protection.*" (Emphasis added). Section 30–05(b) as amended provides that "All rooms indicated to have lead lining for floors, walks [sic] and ceilings in accordance with drawings shall have lead lining of 6 pounds per square foot approximately .101 inch thickness," thus eliminating the necessity of marking on the drawings the "indicated thickness." Moreover, plaintiff, in accordance with the requirement of the contract, submitted its own shop drawings. These were introduced in evidence over the objection of defendant. They are certainly binding on the plaintiff who tendered them in support of his understanding of what was required by the contract. Although neither party refers

to this fact and both completely ignore them, these shop drawings introduced by the plaintiff plainly and unambiguously demonstrate the correctness of defendant's contention.

Sheet 1 of 3 of Drawing C41–B is entitled "Details of Lead Lined Partition, Flooring and Ceiling." It contains the floor plan of the three rooms here in issue. On each of them is stated *"6# lead lining in floor * * *."* It also contains a cross section of a wall and part of a floor adjacent to it, clearly indicating the lead floor lining. This is all marked "typical for Rms. A–205, C–113, C–116." There is a further note "See Dwg. C498 Sheet #1 for *floor lead* plan." (Emphasis added).

Reference to this drawing, C498, shows that it relates *exclusively* to the lead lining of the *floors* for the three rooms. It shows in the exactest detail how the lead sheets were to be installed and it includes a "Floor Lining Schedule," showing exactly how much lead sheeting was required to satisfy this requirement. In light of these drawings and the requirements of the purchase order and specifications, any contention that the subcontractor was not expected to furnish lead for lining the floors of the three rooms is ridiculous.

We can understand the failure of the parties to make reference to this series of drawings only on the assumption that the forwarding of the physical exhibits to this Court made them unavailable to counsel during the preparation of their briefs. We deem it highly undesirable for the Court to decide even a factual issue on a basis not argued or even adverted to by counsel, but these plaintiff-sponsored exhibits so completely demolish any semblance of merit in plaintiff's contention that no floor lead was intended to be furnished by it that we would be remiss if we failed to pay attention to what is so obviously controlling in the case.

Neither contention of the appellant has merit. The trial court correctly entered judgment for the defendant.

The judgment will be affirmed.