Charles A. Loreto,
J. Motion by the plaintiff for summary judgment. The plaintiff, as an assignee of a contract to purchase realty, has brought this action seeking specific performance of the contract.
The agreement provides for the sale of a plot of land situated in the Borough of The Bronx, New York City, upon which is located a building of historic interest. The full purchase price for the property is the sum of $85,000.
The decree of the court seeking specific performance necessarily would involve the determination of the appropriate and equitable disposition of the historic structure known as the Isaac Varían Homestead and as the Valentine House, which was erected in the year 1776 and was the site of encounters between the British and Continental soldiers in the year 1777. It is stated that comment in reference to its historic interest is found in various historic books and also that the Daughters of the American Revolution have installed a plaque at the building to memorialize its historic value and that for many years they had appointed committees to endeavor to find a method to preserve it.
The contract states: “ It is understood and agreed that the seller desires to preserve as an historic building the structure on premises conveyed herein and to move the same within 750 feet, as hereinafter set forth.”
It is further stipulated in the agreement: “ This contract is, therefore, conditioned upon seller securing necessary municipal permission to remove said structure to a property of the City of New York, provided by the City for such purpose. Said removal shall be accomplished, at seller’s sole cost and expense, within 60 days after a site has been secured.”
The agreement further states that the seller shall bear the cost and expense of removal of the structure. Also the seller represents that the Daughters of the American Revolution gave an oral commitment to maintain the building after its removal to a new site. After a recital that the purchaser, without *585 assuming any obligation, agrees to assist in securing permission for the removal of the structure to city-owned property, the contract stipulates: “ Seller will, in order to aid purchaser’s effort, deliver to purchaser within thirty (30) days from date hereof a commitment from D. A. R. for maintenance of said building, together with a financial indemnification to the City of New York for the cost and expense of said maintenance.”
It appears that the seller has not been able to secure the written commitment of the Daughters of the American Revolution because of their financial difficulties, although they express a continuing interest and that the date of closing has already expired, although extended, and that the seller has not obtained a site from the city to which the building may be removed.
The plaintiff asserts, and it is not denied, that he had set a final closing date of sale and was ready, willing and able to comply with the terms of the contract required on his part to be performed.
The answering affidavit recites that the Department of Parks, at the behest of the Bronx Historical Society, early in 1960 made a study of the premises and gave an estimate of the cost of restoring it on city property. This cost is estimated to be the sum of $95,000, an amount exceeding the purchase price.
The plaintiff, charging the seller with default and breach of contract, relies on the provision therein which states: “ In the event that Seller does not deliver to purchaser said D. A. R. commitment and financial indemnification within allotted time, or if permission is secured for removal from City of New York, either by Seller or purchaser, and Seller fails to remove said building within sixty (60) days after written- permission is granted by the City of New York, or if Seller shall do anything, or fail to do that which renders it impossible for purchaser to secure said permission from City of New York, then in such events this condition of removal shall thereafter be null and void and of no further legal effect, the remainder of this contract being in full force and effect and in all other respects ratified and confirmed.”
It appears, therefore, that within the literal terms of the contract the seller has suffered a default. He asserts that the property has been in the possession of his family for approximately 50 years and that, at great financial sacrifice, he has sought to carry out what he regarded as a trust in his own family tradition.
The contract is dated November 11, 1959 and more than six months have elapsed since its date. It further provides: “ If either Seller or purchaser cannot secure permission to remove *586 said structure to a municipally provided site, within six (6) months from date hereof, then this agreement shall be null and void, and the amount paid by the purchaser hereunder (which shall be held in escrow by attorney for the Seller), shall be returned to the purchaser, and there shall then be no further liability on the part of either party to the other.”
It is evident that unexpected and virtually insuperable obstacles have made it impossible for the seller to relocate the structure on public land and to secure an assurance of its maintenance and preservation. The unanticipated cost of the relocation of the building which would require the seller to apply the entire purchase price, as well as additional funds for this purpose, of itself might not be legal justification for nonperformance. However, even if the seller were required to remove and relocate this structure and to convey the land upon which it was located to the plaintiff so that the latter might erect upon it an apartment building, there is no assurance from any quarter that this historic building would be maintained and preserved. Neither the city nor any organization or individual has come forward to underwrite that cost. Moreover, the city refuses to give its consent to its transfer to park land until it has been given assurance of such commitment.
It may be said that the contract is freighted with a matter of public interest; that the historic value of the structure might be considered to involve a public trust. Moreover, the first and last herein quoted extracts of the contract appear to contradict that provision upon which the plaintiff relies as withdrawing from consideration the removal of the structure. "Whether or not a judgment of specific performance shall be granted rests in the discretion of the court after a full consideration of all the facts and circumstances (O’Brien v. Kennedy, 63 N. Y. S. 2d 666, 668, affd. 272 App. Div. 787). There the court held (p. 669): ‘ ‘ In this case the contract sought to be enforced is free from any legal objection and is fair and equitable.” Here the basic question is whether under the facts recited above it would be equitable to grant specific performance as prayed for by the plaintiff which would, perhaps, entail the destruction of an historic structure. Without a trial wherein all the evidence pertaining to its full historic significance and value and what can and should be done for its preservation, it is clear to the court that it would be unwise to grant peremptorily the plaintiff’s motion for summary judgment.
It was said in Beasley v. Texas & Pacific Ry. Co. (191 U. S. 492, 497 (per Holmes, J.): “ To compel the specific performance of contracts is still the exception, not the rule ’ ’. And in *587 Trustees of Columbia Coll. v. Thacher (87 N. Y. 311, 317-318) our Court of Appeals stated: “ It gives or withholds such
decree according to its discretion, in view of the circumstances of the case, and the plaintiff’s prayer for relief is not answered, where, under those circumstances, the relief he seeks would be inequitable. [Citations.] * * * There is, no doubt, difficulty in embodying these principles in any general rule applicable alike to all cases, but in any given instance a court can more easily determine whether it should interfere, or leave the plaintiff to his remedy at law. In Clarke v. The Rochester, Lockport and Nnigara Falls Railroad Company [18 Barb. 350], there was a duty imposed by statute upon the defendant to construct a farm crossing, and the plaintiff sued in equity for its performance. He succeeded at Special Term, but the Greneral Term dismissed his complaint so far as it demanded equitable relief, yet allowed it to stand for the assessment of damages. This result was reached, because the expense to the defendant in constructing the crossing ‘ would much exceed the value of it to the plaintiff,’ and so in the opinion of the court there was not only an absence of proof that the enforcement of the performance of the duty would be equitable, but it was affirmatively proved that it would be inequitable. ’ ’
The motion is, accordingly, denied.