**ROCFORM CORPORATION, Plaintiff-Appellant,**

v.

**ACITELLI–STANDARD CONCRETE WALL, INC., Defendant-Appellee.**

**No. 16261.**

United States Court of Appeals
Sixth Circuit.

Oct. 11, 1966.

O'Sullivan, Circuit Judge, dissented.

Clarence B. Zewadski, Detroit, Mich., (William H. Griffith, Whittemore, Hulbert & Belknap, Detroit, Mich., on the brief) for appellant.

Harry M. Nayer, Detroit, Mich., (Nathan S. Peterman, Detroit, Mich., Travis, Warren & Nayer, Richard A. Cogan, Detroit, Mich., on the brief) for appellee.

Before O'SULLIVAN, EDWARDS and CELEBREZZE, Circuit Judges.

EDWARDS, Circuit Judge.

This is a patent infringement action brought by plaintiff-appellant Rocform Corporation against defendant-appellee Acitelli-Standard Concrete Wall, Inc. The patent in suit is No. 2,526,529, issued October 17, 1950, for a "Prefabricated Wall Form" for pouring concrete basement walls. The patent in suit will expire October 17, 1967.

Plaintiff claims defendant infringed the patent by employing it in pouring basement walls without paying any license fee.

In defense, defendant Acitelli claimed invalidity of the patent and denied infringement. Defendant also defended by alleging that Rocform had misused its patent. This appeal is derived from a trial in the United States District Court for the Eastern District of Michigan wherein testimony was taken on the misuse issue only, after defendant had conceded (for purposes of that hearing) that the patent was valid and infringed.

At the conclusion of this hearing the District Judge entered lengthy findings of fact and conclusions of law, finally concluding:

"In this action for infringement of a patent by defendant, the defense of misuse of the patent in suit, by attempting to extend patent monopoly beyond the expiration date of the patent, has been established and is a valid defense.

"Due to misuse of the patent in suit by plaintiff, as owner thereof, this action will be dismissed for want of equity."

On appeal plaintiff-appellant Rocform contends that this record discloses no coercion; that there is no evidence of misuse of the patent, and that mandatory package licensing of "interlocking" patents is not a misuse.

The record in this appeal shows that Rocform had signed standard licensing agreements with 189 builders. Acitelli had been one of these, as an individual builder; but after incorporation his company came into possession of a set of Rocform forms which it proceeded to use without a license. Rocform offered to license defendant, but only under its standard license agreement, which offer defendant refused.

The virtues of the patent in suit in its use in housebuilding are that it allows a builder to set forms for pouring concrete basement walls rapidly and then disassemble and reemploy substantially all of the fixtures and material from that set of forms for other jobs. The District Judge found that the system gave its users a competitive advantage.

Plaintiff Rocform did not issue licenses under this patent (or any of its other patents), but did license builders to build under "The Rocform System." The District Judge who heard this case described this license agreement in his findings:

"Under provisions of the license agreement,

"Licensor grants to licensee a non-exclusive license to use the Rocform System in accordance with terms thereof, agrees while the agreement is in effect to sell to licensee all necessary Rocform panels and hardware and to replace and repair without charge worn out or damaged hardware, and authorizes use of the words 'Rocform System' in promotion and advertising;

"Licensee agrees to pay for the equipment and to pay a license fee for each basement he casts (license fees vary from approximately $10.00 to $25.00 per basement cast, depending on size);

"It is acknowledged and agreed that 'certain features, hardware and accessories used in and being a part of the Rocform System' are covered by patents and licensor stipulates that any further improvement in the system shall be made available to licensee for use under the agreement;

"The agreement and license is revoked, remanded and terminated upon default in payments or in any condition imposed by the license on use of the system."

The District Judge also pointed out that the patent in suit had an early termination date (October 17, 1967), but the Rocform standard license agreement provided no reduction of license fees or termination date (except with penalties on the licensee's default). After a careful review of the license and its use, he concluded:

"The license is, in the view of this Court, primarily a patent license and other features thereof are only incidental to the grant of use of patents. Upon a careful reading of the license agreement it is apparent that the

prime consideration for the license fee is the grant to use the Rocform System which cannot be used without using the patent in suit and other patents. The services which are included in the consideration for the license are disproportionate to the license fees stipulated therein."

We regard this language and the District Judge's other findings as holding that plaintiff-appellant employed the patent in suit so as to coerce (or attempt to coerce) this defendant to purchase the Rocform System and thus to purchase other patents and unpatented materials and services.

■ We have reviewed the basic findings of fact of the District Judge against the record. In our view there is substantial evidence to support them and they are not clearly erroneous. In this situation we cannot properly set them aside. Toledo Scale Corp. v. Westinghouse Electric Corp., 351 F.2d 173 (C.A. 6, 1965); Graver Tank & Mfg. Co., Inc. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949), rehearing granted, 337 U.S. 910, 69 S.Ct. 1046, 93 L.Ed. 1722 (1949), aff'd, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

But appellant contends that some (if not all) of the District Judge's findings of fact are really interpretations of the license agreement and hence that they should not be reviewed under the clearly erroneous rule. Crosley Radio Corp. v. Dart, 160 F.2d 426 (C.A. 6, 1947). To the extent that our affirmance depends upon interpretation of that document, we have inspected and considered it and agree with the interpretations placed thereon by the District Judge.

This brings us to the legal conclusions in this case. Plaintiff-appellant contends that the license agreement (even if properly described above) was a mandatory packaging agreement for interlocking patents related to producing one product and hence valid under International Mfg. Co. v. Landon, Inc., 336 F.2d 723 (C.A. 9, 1964), cert. denied, 379 U.S.

988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965); see also Standard Oil Co. (Indiana) v. United States, 283 U.S. 163, 171, 51 S.Ct. 421, 75 L.Ed. 926 (1931).

The District Judge, however, did not find this standard licensing agreement illegal per se because it represented mandatory patent package licensing. He found plaintiff's license agreement illegal because it contained no termination clause and hence represented an attempted illegal extension of the patent in suit.

In the recent case of Brulotte v. Thys Co. the Supreme Court said:

"A patent empowers the owner to exact royalties as high as he can negotiate with the leverage of that monopoly. But to use that leverage to project those royalty payments beyond the life of the patent is analogous to an effort to enlarge the monopoly of the patent by tieing the sale or use of the patented article to the purchase or use of unpatented ones. See Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Mercoid Corp. v. Mid-Continent Inv. Co., 320 U.S. 661, 664–665, 64 S.Ct. 268, 88 L.Ed. 376, and cases cited." Brulotte v. Thys Co., 379 U.S. 29, 33, 85 S.Ct. 176, 179, 13 L.Ed.2d 99 (1964).

In the instant case the District Judge said: "Upon expiration of the patent in suit the consideration for the grant of the license becomes substantially devaluated. * * *" The District Judge's findings make it clear that the patent in suit which expires in 1967 is the most important consideration for the license.

■ We believe that the District Judge was correct in viewing this licensing agreement as an illegal attempt to extend the patent in suit. It contains no termination clause running to the benefit of the licensee. See 3A Corbin, Contracts § 761 (1960). After the expiration of the patent in suit, Rocform's licensees would continue to pay the same fees as are provided during the life of the crucial patent.

The dissent in this case asserts that appellee is not entitled to claim patent misuse absent proof of a demand for the patent in suit as a separate item.

■ Clearly, where a licensee seeks relief from a patent package contract which he has signed voluntarily, he should be able to show a demand by him (and a refusal!) for the desired patent or patents as a separate item or items. Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). Such a demand is not, however, held essential to a defense of misuse when the patentholder seeks equitable relief from infringement while still pursuing the illegal practice. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

On this point the District Judge said:

"If defendant's hands be unclean in that it made no bona fide application to plaintiff for licensing, or for any other reason indicated by the facts in this case, such uncleanliness will not render plaintiff's hands clean if it is attempting to unlawfully extend its patent monopoly."

Cf. American Securit Co. v. Shatterproof Glass Corp., 268 F.2d 769, 776 (C.A. 3, 1959), cert. denied, 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed.2d 157 (1959).

The dissent also contends that a flat price for use of a number of patents is permissible practice up to the termination date of "the last necessary patent."

We believe this is too broad a contention. We do not deal here (as did the Supreme Court in Brulotte v. Thys Co., supra) with the sale of a piece of machinery which incorporated a number of patents. Rather we deal with a licensing arrangement where one important patent (about to expire) is grouped with others of longer duration for "leverage." Cf. American Securit Co. v. Shatterproof Glass Corp., supra.

We believe such a contract, when it contains no diminution of license fee at the expiration of the most important patent and contains no termination clause

at the will of the licensee, constitutes, in effect, an effort to continue to collect royalties on an expired patent. Brulotte v. Thys Co., supra; American Securit Co. v. Shatterproof Glass Corp., supra.

Since, however, the patent is presumptively valid and the complained of extension would not take place until October 17, 1967, we have considered the propriety of granting plaintiff relief from infringement until the defendant could show damage from the illegal extension. We have concluded, however, that there is no merit in employing the equity powers of the federal court to force defendant to enter into an agreement which is plainly illegal, even if the damages therefrom be future ones.

In *Morton Salt* the United States Supreme Court said:

"It is a principle of general application that courts, and especially courts of equity, may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. Virginian Ry. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789; Central Kentucky Natural Gas Co. v. Railroad Commission, 290 U.S. 264, 270–273, 54 S.Ct. 154, 156, 157, 78 L. Ed. 307; City of Harrisonville, Mo. v. U. S. Dickey Clay Mfg. Co., 289 U.S. 334, 337–338, 53 S.Ct. 602, 603, 77 L.Ed. 1208; Beasley v. Texas & Pacific Railroad Co., 191 U.S. 492, 497, 24 S.Ct. 164, 165, 48 L.Ed. 274; Securities & Exchange Comm. v. United States Realty Mfg. Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293; United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211." Morton Salt Co. v. G. S. Suppiger Co., supra at 492, 62 S.Ct. at 405.

The license agreement can, of course, readily be amended. It seems clear to us that the District Judge was correct in denying plaintiff the use of the equity powers of the court until and unless it purges itself of the practice identified above as representing patent misuse.

Preformed Line Products Co. v. Fanner Mfg. Co., 225 F.Supp. 762 (N.D. Ohio, 1962), aff'd, 328 F.2d 265 (C.A. 6, 1964), cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964); B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367 (1942).

Affirmed.

O'SULLIVAN, Circuit Judge (dissenting).

I am unable to join the conclusion of my brothers. Defendant concedes that it is infringing a valid patent. The judgment before us allows it to continue. This is because a contract then in use by plaintiff, and which defendant refused to sign, licensed the use of all of plaintiff's patents; and because the contract would continue unchanged as individual patents expired until the expiration of the final patent; and because plaintiff had a policy of not selling the materials which could be used to infringe its "combination" patents unless licenses were first taken.

Without any prior attempt to obtain a license to do so, defendant began infringing the patent in suit. Plaintiff threatened that it would sue unless defendant entered into the agreement then in use by plaintiff whereby it licensed builders to use "The Rocform System." This agreement made no reference to any particular patents, but contained the following provisions:

"8. It is hereby acknowledged and agreed that certain features, hardware and accessories used in and being a part of the Rocform System are covered by letters of Patent for the protection of the Licensor and that it has good title thereto and the right to grant this license, and Licensor stipulates that any further improvement in its system developed by or for it

shall be available for use hereunder by licensee, and,

"9. The licensee hereby agrees not to dispute the validity of any Letters of Patent or the title of the Licensor thereunder nor aid others in doing so, and,"

The proofs established that it had been plaintiff's policy to require the signing of such a contract as a condition to use of its system. Use of the Rocform System required employment of the patent in suit, which will not expire until October 17, 1967. At the time here involved, plaintiff owned several other unexpired patents related to and useable in the processes of the Rocform System. The contract would require a licensee to continue to pay a stipulated fee so long as the Rocform System was used by a licensee.[1] When requested to sign the Rocform System contract, defendant refused, without suggesting that any other agreement would be acceptable or making any request that it be given a license limited to the patent which it was infringing. Cf. McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 408 (CA 10, 1965) cert. den. 383 U.S. 933, 86 S.Ct. 1061, 16 L.Ed.2d 851 (Mar. 7, 1966).

It is clear indeed that misuse of a patent denies its fruits to the patentee. Such misuse may consist of coercing the acceptance of unwanted licenses to gain the use of a desired patent—mandatory packaging. American Securit Co. v. Shatterproof Glass Corp., 268 F.2d 769 (CA 3, 1959); it may arise from coercing the purchase of unpatented material as a condition to use of a valid patent—illegal tying. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942), reh. den. 315 U.S. 826, 62 S.Ct. 620, 86 L.Ed. 1222 (1942); it may consist of attempting to extend the monopoly of a patent after it

---

1. There was a provision in the contract for automatic termination upon any failure of the licensee to remit payments within thirty days. Presumably this could be used to terminate the agreement whenever a licensee decided he only needed to use devices on which the patents had already expired. Upon the happening of such event, a licensee would be responsible for any sums then due and unpaid and for damages for "the continued *unlawful* use" of the system.

has expired, Brulotte v. Thys Co., 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964); Prestole Corp. v. Tinnerman Products, Inc., 271 F.2d 146 (CA 6, 1959) cert. den. 361 U.S. 964, 80 S.Ct. 593, 4 L.Ed.2d 545 (1960).

Defendant's position here is that it is entitled to free use of plaintiff's patent because plaintiff had in the past entered into 189 license agreements with users of the Rocform System containing provisions which, if they had been coerced, would not be enforceable and because plaintiff requested defendant to sign such a contract. We consider that the District Judge was correct in his statement that coercion was essential to a finding of misuse:

"Licensing of several patents in single license agreement does not constitute patent misuse unless element of coercion is present, such as where there has been request by prospective licensee for license under less than all patents and refusal of by licensor to grant such license. Eversharp, Inc. v. Fisher Pen Co., 1961, D.C., 204 F.Supp. 649."

He was of the view that, there being no evidence of coercive practices in the making of plaintiff's previous 189 license agreements, such licensing contracts did not constitute misuse of a patent. He said,

"* * * present licensees of plaintiff could contract with it as they choose; if the consideration was acceptable to them, in return for the package patent license and services to be performed thereunder, and it has not been shown that any licensee requested but was refused a grant of a license to use one patent only upon acceptance of a license to use more than one patent, no mandatory package patenting has been established as to such licensees."

He found misuse, however, in the case of plaintiff's offer of a like contract to defendant, primarily, as we view it, because defendant refused to accept such a contract. He said,

"But plaintiff offered to defendant, and defendant refused, plaintiff's standard license on the ground, primarily, that defendant would be required to continue payment of royalties after expiration in 1967 of the basic wall-form patent, if it entered into such licensing agreement."

The District Judge's observation that this refusal was "on the ground, primarily, that defendant would be required to continue payment of royalties after expiration in 1967 of the basic wall-form patent, if it entered into such licensing agreement" involved a misunderstanding of the evidence. The defendant tacitly concedes this now, saying in its brief only that such was "*probably* one of Acitelli's reasons for its refusal to become a licensee." (Emphasis added.) The fact is that defendant Acitelli's representative who talked with plaintiff about Acitelli's admitted infringement of the patent in issue, gave no reason for refusing to sign the offered contract; it asked for no modification of it, it did not ask to be licensed alone under the patent in suit; it merely refused and went on infringing.

For the view I express I concede arguendo that plaintiff's previous agreements licensing its Rocform System would have been unenforceable if coerced and that had defendant sought and been refused a license for less than all of plaintiff's patents, the plaintiff could be found guilty of misuse. That, however, is not what happened. I read defendant's position to be that, without any showing of intent to coerce, plaintiff, having once proposed that defendant sign its regular licensing contract, thereby surrendered all right to enforce its patent; that such request alone gave defendant the privilege of appropriating the patent to its own free use. I find such position invalid.

Relevant to whether defendant had been coerced, the District Judge said,

"If defendant's hands be unclean *in that it made no bona fide application to plaintiff for licensing,* or for any other reason indicated by the facts in this case, such uncleanliness will not render plaintiff's hands clean if it is attempt-

ing to unlawfully extend its patent monopoly." (Emphasis supplied.)

I read the majority opinion as holding that, without reference to coercion, the Rocform contract was illegal per se because, as viewed by them, Rocform was attempting to extend the life of one of its patents. But the majority also apparently assume that an element of coercion was indeed present, by stating that the District Judge held that

"plaintiff-appellant employed the patent in suit so as to coerce (or attempt to coerce) this defendant to purchase the Rocform System and thus to purchase other patents *and unpatented materials and services*." (Emphasis supplied.)

Such conduct would result in an illegal tie-in, but I do not interpret the District Judge's opinion as so holding, nor would the proofs justify such a conclusion.

### 1. Patent Extension.

I do not consider that fixing one price for use of the Rocform System and any one or all of Rocform's patents constitutes illegal patent extension where no coercion was employed. Because the contract may continue past the date, 1967, when the patent in suit expires, does not mean that its monopoly is thereby extended. The majority opinion seemingly rests on the fact that "After the expiration of the patent in suit, Rocform's licensees would continue to pay the same fees as are provided during the life of the crucial patent," and the inference therefrom that some part of the license fees after 1967 would necessarily have to be attributed to an extension of the return from the patent which expired in that year. But this is not so. The price which a builder is willing to pay to use the Rocform System remains a constant, and it is immaterial to the builder whether the most effective use of that system is controlled by ten unexpired patents, or by the very last of those ten patents to expire. Such seems to be the clear implication of the Supreme Court's holding in Brulotte v. Thys Co., 379 U.S. 29, 30, 85 S.Ct. 176,

178, 13 L.Ed.2d 99 (1964): "We conclude that the judgment below must be reversed insofar as it allows royalties to be collected which accrued after the *last* of the patents incorporated into the machines had expired." (Emphasis added.) The majority would hold the Rocform contract illegal before the expiration of the first patent.

### 2. Illegal Tie-in.

There was a complete lack of proof that plaintiff had made any attempt to use the leverage of its patent monopoly to extend its power into another market, cf. Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). The District Judge specifically found: "Under the license agreement plaintiff obligates himself to furnish all necessary equipment but *licensees are not required to purchase any equipment from plaintiff*, * * *" and again, "While *the license agreement does not obligate a licensee to purchase any equipment* whatsoever * * *." (Emphasis added.) The only basis for any holding that there has been an illegal tie is a finding by the district judge that "Plaintiff will refuse to sell any of the wall-forming equipment to nonlicensees." Apart from the fact noted above that this seems a perfectly reasonable attitude for the holder of a combination patent to take, whatever else it might be, the policy complained of could not be construed as misuse of the *patent*.

In the absence of any proof of coercion or attempt to extend the patent monopoly beyond the term of the last necessary patent, there is no ground for a finding of misuse. Contrast McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381 408–410 (CA 10, 1965) and Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950) with United States v. Paramount Pictures, Inc., 334 U.S. 131, 156–159, 68 S.Ct. 915, 92 L.Ed. 1260 (1948) and Brulotte v. Thys Co., 379 U.S. 29, 30, 33, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964).

The majority recognize that defendant has appropriated plaintiff's patent with-

out request for a license therefor, but withhold relief by asserting that "there is no merit in employing the equity powers of the federal court *to force defendant to enter into an agreement which is plainly illegal,* even if the damages therefrom be future ones." (Emphasis supplied.) But plaintiff's complaint does not ask such relief—it seeks only the enjoining of defendant's infringement of its patent and damages flowing therefrom.

I would reverse the judgment.